John J. Finnorn v. Commissioner. John J. Finnorn and Natalie E. Finnorn v. Commissioner.
Finnorn v. Commissioner
Docket Nos. 62470, 62471.
United States Tax Court
T.C. Memo 1960-14; 1960 Tax Ct. Memo LEXIS 275; 19 T.C.M. (CCH) 87; T.C.M. (RIA) 60014; February 8, 1960
*275 Jurisdiction. - The petitioners willfully failed to timely file income tax returns for the years 1945 to 1951. They filed delinquent returns for such years in 1952 at the request of revenue agents, paying the tax shown thereon and also paying additions to tax, pursuant to section 291(a), I.R.C. 1939, for all years and pursuant to section 294(d) for some years. Thereafter respondent mailed notices of deficiency setting forth deficiencies in additions to tax under section 293(b), but no deficiencies in tax itself except for one year. Held, that this Court has jurisdiction based upon such notices of deficiency and the petitions filed pursuant thereto. Fraud. - Where the petitioner, who was a certified public accountant, and an attorney practicing law, failed to maintain books or records, failed to make notations from which it could be determined which of his bank deposits represented taxable income, made no attempt to compute his tax liabilities during the taxable years, and gave no reasonable explanation for willful failure to file returns and pay the taxes due, held, that he is liable for additions to tax under section 293(b). John J. Finnorn, pro se, 3321 Vincennes Place, New Orleans, *276 La. Towner S. Leeper, Esq., for the respondent. ATKINS
Memorandum Findings of Fact and Opinion ATKINS, Judge: The respondent, on February 24, 1956, mailed deficiency notices to the petitioner John J. Finnorn for the years 1945 to 1947 and to him and the petitioner Natalie Finnorn for the years 1948 to 1951, setting forth the following deficiencies in income tax and additions to tax: Additions to Tax, I.R.C. 1939
Income
Sec.
Sec.
Sec.
Year
Tax
291(a)
294(d)
293(b)
1945
None
None
None
$ 505.67
1946
$3.43
None
None
373.00
1947
None
$41.71
None
227.50
1948
None
None
None
129.00
1949
None
None
None
1,561.53
1950
None
None
None
481.45
1951
None
None
None
1,002.53 One issue, raised by the petitioner on motion, relates to our jurisdiction. The issue on the merits is whether the petitioners are liable for additions to tax, on account of fraud, under section 293(b) of the Internal Revenue Code of 1939. An issue as to the statute of limitations raised by the petitioners has in effect been conceded by them, inasmuch as they have stipulated that agreements as to all years were executed under section 276(b) extending the time for assessment until June 30, 1956. Findings of Fact Some of the facts are stipulated and are found as stipulated, *277 the stipulation being incorporated herein by this reference. The petitioners, John J. and Natalie Finnorn, are husband and wife, residing in New Orleans, Louisiana. The petitioner John J. Finnorn will hereinafter be referred to as the petitioner. The petitioner was born in 1897 in New Orleans and has resided there throughout his life. He was employed as a revenue agent in the Internal Revenue Service from approximately May 1922 until August 1926. He graduated from law school cum laude in 1926 and was admitted to the Louisiana bar in that year. He became a certified public accountant in 1928. Throughout the years 1945 through 1951 he was enrolled to practice before the United States Treasury Department and this Court. During these years petitioner's tax practice was varied. He set up accounting systems for clients, both individual and corporate, and prepared financial statements and Federal income tax returns for them. He represented clients in tax matters before the Internal Revenue Service and tried several cases before this Court. In the period from 1945 through 1951, the petitioner did not maintain books of account or original records from which the amounts of his gross income could *278 be determined. He did maintain a bank account and retained his monthly bank statements and checks beginning in the early part of 1946 and extending through 1951. The source of deposits in the bank account could not be identified by any records of the bank or records kept by the petitioner. Nor could the character of his expenditures be determined from his checks, except as might be indicated by the names of the payees. Some of the deposits made by the petitioner represented money which he had borrowed, some consisted of money which he had previously withdrawn and redeposited, and some constituted funds deposited for others. Petitioner filed a timely Federal income tax return for 1944. He obtained an extension of time for filing his Federal income tax return for 1945, but did not file his return at the expiration thereof. He filed declarations of estimated tax for the years 1945 and 1946. An amount of $1,070 was paid in 1946 as estimated tax of both petitioners for 1945 and an amount of $1,810 was paid in 1947 as estimated tax for both for 1946. No declarations of estimated tax were filed for the years 1947 through 1951. He willfully failed to file timely income tax returns for the *279 taxable years 1945, 1946, and 1947, and each petitioner willfully failed to file timely income tax returns for the taxable years 1948 through 1951. In 1952 an investigation of the petitioners' income tax liabilities for 1945 through 1951 was made by representatives of the respondent. The agents examined the bank account of the petitioner, but since it could not be determined therefrom which deposits represented income, they by various means, including the checking of court records, attempted to locate the petitioner's clients. They contacted the petitioners who made available to them the bank statements and checks which they had, and the petitioner, upon questioning, confirmed the agents' information as to clients and supplied the names of some others. In connection with the investigation and in support of delinquent returns later furnished at the agents' request, the petitioner furnished the agents various schedules analyzing his bank deposits and his expenditures. It was in this manner that the petitioner belatedly attempted to determine his taxable income for the years in question, he having not attempted prior thereto to compute his tax liability currently during the years in question. *280 In connection with the investigation the petitioner filed a sworn statement with the agents on October 10, 1952, in which he stated that to the best of his recollection all the fees that he had received were deposited in the bank except possibly a few $5 or $10 fees received for making returns. Generally the fees which the petitioner received were in the form of checks. All such checks were deposited in the petitioner's bank account except as follows: three checks of Delacroix Corporation totaling $600 in 1947; two checks of Delacroix Corporation totaling $400 in 1948; two checks of Delacroix Corporation totaling $200 and two checks of Federal Furniture totaling $125 in 1949; a check of Federal Furniture for $100 and a check of Jefferson Furniture for $200 in 1950; a check of New Orleans Metal Co. for $250, a check of Federal Furniture for $125, and a check for $1,777.77 of Hibernia Bank and Trust Co. in 1951. The last mentioned check was deposited in the petitioner's wife's bank account. In the case of Delacroix Corporation the petitioner received fees of about $6,000 in the period 1947 through 1950, but did not have a stipulated time to receive fees. In the case of each of the abovementioned *281 checks from Delacroix which were not deposited, the petitioner would ask the client for the check and then would stop at the Federal Furniture store, which was close by, and have the check cashed while on his way to the race track or to a "handbook". The same was true of the checks of Federal Furniture Company and the check of the New Orleans Metal Company. The check of the Hibernia Bank for $1,777.77 was endorsed by the petitioner to his wife to be used as funds for his home. The portion of fees received in cash amounted to $410 in 1947, $910 in 1948, $1,295 in 1949, $3,318.48 in 1950, and $600 in 1951. No fees were paid by cash in 1946 and there is no evidence as to whether any were paid by cash in 1945. All these cash fees were deposited except one of $300 in 1950. As a result of the investigation and at the request of one of the agents, the petitioner on August 25, 1952, filed with the collector of internal revenue at New Orleans delinquent separate returns for himself for the years 1945, 1946, and 1947, and both petitioners filed delinquent joint income tax returns for 1948, 1949, and 1950. They filed a delinquent joint income tax return for 1951 on September 29, 1952. These *282 showed gross income, business expenses, and net income from the petitioner's practice of law and accountancy, and tax liability as follows: Business
Adjusted
Net
Year
Gross Income
Expense
Gross Income
Income
Tax Liability
1945
$11,722.07
$ 471.46
$11,250.61 *
$ 5,125.31
$1,011.34 **
1946
9,478.51
67.95
9,410.56 *
4,234.75
742.57 **
1947
6,561.10
255.13
6,305.97 *
2,837.69
450.58
1948
3,882.75
173.64
3,709.11
3,338.20
255.34
1949
17,733.32
18.70
17,714.62
16,714.62
3,123.06
1950
9,145.20
1,219.49
7,925.71
7,133.14
963.30
1951
12,179.67
894.23
11,285.44
10,285.44
2,005.06
At the time of filing the delinquent returns for the years 1945 to 1950, the petitioner filed with the Internal Revenue Service on behalf of himself and his wife a statement set forth in part in the margin. [1] *283 Based upon these delinquent returns the respondent assessed and collected the following taxes and additions to tax: Additions to Tax
Section
Section
Year
Income Tax
291(a)
294(d)
1945
$1,011.34
$119.09
None
1946
742.57
None
None
1947
455.00
72.04
$ 68.27
1948
258.00
63.84
38.70
1949
3,123.06
780.77
468.45
1950
962.90
240.83
144.42
1951
2,005.06
501.27
300.77
Thereafter, on February 24, 1956, the respondent mailed notices of deficiency to the petitioners determining additions to tax for each year on account of fraud, pursuant to section 293(b) of the Internal Revenue Code of 1939, and also setting forth a deficiency in tax for 1946 of $3.43 and an addition to tax for the year 1947 in the amount of $41.71, pursuant to section 291(a), all as set forth hereinabove. Thereafter, in 1957, the respondent made a further investigation of the tax *284 liabilities of the petitioners and re-examined the delinquent returns which had been filed and the schedules which the petitioner had submitted in substantiation thereof. In such returns and in the schedules the petitioner had erroneously failed to include the fees above set forth totaling $2,300 over the years 1947 through 1951, which had not been deposited in his bank account. Also, in the schedule for the year 1949, the petitioner had erroneously shown a deposit of $300 as nontaxable income, which in reality represented a fee. Also in the schedule for 1950 he had erroneously shown four deposited fees, totaling $1,300, as nontaxable income. As a consequence, these amounts did not appear in the delinquent returns which had been filed for 1949 and 1950. In addition, the petitioner had failed to include in the schedule and in the return for 1950 an amount of $337.50, representing taxable gain upon the sale of certain stock. The check for the selling price of this stock had been deposited in the petitioner's bank account. Thus, the stipulated correct gross and net income of the petitioner for the years 1945, 1946, and 1947, and of both petitioners for the years 1948, 1949, 1950, and *285 1951, derived, with one exception noted below, from the petitioner's practice of law and accountancy was as follows: Business
Adjusted
Standard
Year
Gross Income
Expense
Gross
Deduction
Net Income
1945
$11,722.07
$ 471.46
$11,250.61 **
$ 500.00
$ 5,125.31
1946
9,478.51
67.95
9,410.56 **
470.53
4,234.75
1947
7,161.10
255.13
6,905.97 **
345.30
3,107.68
1948
4,282.75
173.64
4,109.11
410.91
3,738.20
1949
18,358.32
18.70
18,339.62
1,000.00
17,339.62
1950
11,382.70 *
1,219.49
10,163.21
1,000.00
9,163.21
1951
12,554.67
894.23
11,660.44
1,000.00
10,660.44
As a result of the re-investigation which showed that the income was understated in the delinquent returns to the extent set forth above, the respondent filed amended answers on December 2, 1957, which was before the date of trial, making claim for increases in deficiencies in tax and additions to tax for the years 1947-1951 (that is, in addition to amounts set forth in the deficiency notices and in addition to the amounts previously paid as set forth above pursuant to the delinquent returns) as follows: Additions to Tax
Income
Sec.
Sec.
Sec.
Year
Tax
291(a)
294(d)
293(b)
1947
$113.00
$ 69.96
$16.93
$ 56.50
1948
59.00
15.41
8.86
29.50
1949
358.24
89.56
53.74
179.12
1950
466.46
116.51
69.97
233.23
1951
101.26
25.31
15.18
50.63
On *286 May 27, 1953, the petitioner, upon a plea of nolo contendere, was convicted of willfully failing to file income tax returns for 1949 and 1950 in violation of 26 U.S.C., section 145(a). The petitioner was sentenced to pay a fine of $1,000, and to serve one year's imprisonment on each of two counts, to run consecutively. The execution of the prison sentences was suspended and petitioner was placed on probation for three years. Some part of the deficiency for each of the years 1947 to 1951, inclusive, was due to fraud with intent to evade tax. Opinion After this case was submitted upon a stipulation of facts and testimony adduced at the hearing, the petitioners filed a motion to dismiss for lack of jurisdiction. In 1952 the petitioners had filed delinquent income tax returns for the years 1945 to 1951, inclusive, and paid the tax shown therein, as well as certain additions to tax under section 291(a) of the Internal Revenue Code of 1939 for willful failure to file returns and under section 294(d) relating to the estimated tax. In the notices of deficiency which were thereafter mailed and upon which the petitions herein are based, the respondent did not purport to set forth any deficiencies *287 in income tax (the taxes shown on the delinquent returns having been assessed and paid), except in an amount of $3.43 for 1946. In such notices the respondent set forth deficiencies in tax liabilities consisting of additions to tax under section 293(b) of the Internal Revenue Code of 1939, [2] for each of the years 1945 to 1951. It is the contention of the petitioners that since they filed delinquent returns and paid the tax, there was no deficiency in tax which could form the basis of the respondent's determination of a deficiency in the additions to tax under section 293(b) and that hence we are without jurisdiction. There are set forth in the margin applicable portions of the Internal Revenue Code of 1939 dealing with our jurisdiction. [3] *288 *289 Under section 293(b) any addition to tax on account of fraud is to be assessed, collected, and paid "in the same manner as if it were a deficiency," the word "so" appearing in section 293(b) referring to language used in section 293(a). Herbert Eck, 16 T.C. 511, affd. (C.A. 2), 202 F. 2d 750, certiorari denied 346 U.S. 822. This means, of course, that any addition to tax under section 293(b) determined by the respondent is to be made the subject of a notice of deficiency with a consequent right in the taxpayer to file a petition *290 with this Court. Here the respondent did determine that pursuant to section 293(b) there were additional amounts due from the petitioners. In accordance with section 272(a) he sent notice thereof to the petitioners, and the petitioners filed their petitions with this Court. Under the circumstances, we think it clear that we have jurisdiction and the motion to dismiss has accordingly been denied. The question of whether the petitioners are liable for the additions to tax under section 293(b) and if so, the amounts thereof, are matters to be determined upon the merits of the case. Upon the issue of fraud the burden of proof is upon the respondent. Section 1112, Internal Revenue Code of 1939. Fraud is a question of fact. It is never presumed but must be shown by clear and convincing evidence. Archer v. Commissioner (C.A. 5), 227 F. 2d 270; Frank Imburgia, 22 T.C. 1002; and W. A. Shaw, 27 T.C. 561. Here the amount of the petitioners' taxable income for each of the years has been stipulated, and it has also been stipulated that they willfully failed to file returns for each year. At the time of the filing of the delinquent returns the petitioners paid additions to tax under section 291(a) *291 [4] *292 for willful failure to file, and concede in the stipulation that further amounts of both tax and additions under section 291(a) are due for the years 1947 through 1951. However, they deny liability for additions to tax under section 293(b), stating that mere failure to file returns does not subject them to the greater penalty under section 293(b) which deals with the perpetration of a deliberate fraud. It is true, of course, that since section 291(a) provides for an addition to tax for willful failure to file a return while section 293(b) provides for an addition if any part of any deficiency is due to fraud with intent to evade tax, the mere fact of willful failure to file is not sufficient to sustain a conclusion that there was an intent to defraud. See in this connection Spies v. Commissioner, 317 U.S. 492, a criminal case, in which it was held that evidence of a willful but passive failure to file a return, although sufficient to support a conviction for a misdemeanor under section 145(a), is not alone sufficient to sustain a conviction for the felony, under section 145(b), of attempting to evade or defeat tax. However, the Supreme Court there recognized that the fact of willful failure to file might be taken into consideration with other facts in deciding whether there was an attempt to defeat and evade tax. We think there can be no question that the continued willful failure of the petitioners to report, and pay tax on, the substantial amounts of taxable income which it has been stipulated they had over the years 1947 through 1951, is a *293 necessary and proper factor to take into consideration in determining the question here presented. See Powell v. Grandquist (C.A. 9), 252 F. 2d 56, in which the view was taken that knowingly refusing to make any statement of income for a period of nine years was persuasive evidence, in connection with other facts, of an intent to defraud. See also Holland v. United States, 348 U.S. 121, in which it was held that intent to defraud may be inferred from a consistent pattern of underreporting large amounts of income, coupled with failure to keep proper books and records.[5]
In the instant case there are other facts, besides the continued willful failure to file returns, which must be considered. The petitioner is a man of intelligence and is thoroughly experienced in matters of taxation. There can be no question that he knew that he was making eough income during the years 1947 through 1951 to require the filing *294 of returns and the payment of taxes. Yet he did not keep any records from which proper returns could be made. It is true that he maintained a bank account and deposited most of his fees therein, but he made no notation of the character of each deposit. His total deposits were large and represented not only fees but borrowed money, redeposits, and deposits for the accommodation of others. From the bank records alone neither he nor anyone else could compute his taxable income. Indeed this is clearly evidenced by the fact that when he made schedules and filed delinquent returns in 1952, deposits representing taxable income were wrongly identified as nontaxable income, and all undeposited fees, although they were not in relatively large amounts, were omitted. Furthermore, at no time did the petitioner ever make any attempt, in the years in question, to calculate his tax liability. It was not until 1952 when the revenue agents made the investigation that he first attempted to calculate his taxable income and tax liability. All these circumstances, coupled with the petitioner's actual failure to file returns over the period 1947 through 1951 until his liability was discovered by the revenue *295 agents and returns were requested by them, convince us that the petitioner intended to evade disclosure and payment of his tax liabilities, and that therefore the failure to file returns and pay the tax due was due to fraud with intent to evade tax. The facts here presented do not indicate to us mere carelessness or negligence, or merely raise a suspicion of fraud. We have very carefully considered the testimony of the petitioner which was to the effect that his failure to file returns and pay his taxes was due to the fact that his work kept him too busy to take care of his own tax liabilities, and that having gotten behind he never caught up. We cannot accept this as being the true reason. The petitioner presented no evidence to show that his work was so demanding over this long period as to preclude him from attending to his own tax obligations. Indeed his testimony shows that he did at times have leisure to attend horse races and visit "handbooks." The record contains no evidence whatever that the petitioner intended eventually to pay his taxes, such as requesting extensions of time for filing returns, or otherwise. While it appears that the petitioner cooperated with the agents *296 in the investigation, and while it may well be that it was his purpose to report his true income in the delinquent returns filed, these considerations do not alter our conclusion that up to that time he harbored a fraudulent intent to evade tax. The petitioner relies heavily upon Jones v. Commissioner (C.A. 5), 259 F. 2d 300, reversing 25 T.C. 1100. That case is not governing here. The facts in that case differ widely from those here present. The Court of Appeals there found that there was no evidence of an intent to defraud, but merely evidence of willful failure to file returns for two years. Based upon the whole record we conclude, and have found as a fact, that some part of the deficiency for each of the years 1947 through 1951 is due to fraud with intent to evade tax. It should be added that the record does not show that the petitioner Natalie E. Finnorn had any intent to defraud, but having filed joint returns with her husband for the years 1948 through 1951, she is jointly liable for any additions to tax under section 293(b). Section 51(b)(1), Internal Revenue Code of 1939; Boyett v. Commissioner (C.A. 5), 204 F. 2d 205, affirming a Memorandum Opinion of this Court; Dora S. Hughes, 26 T.C. 23, *297 and cases cited therein. The evidence does not show that any part of any deficiency for 1945 and 1946 is due to fraud with intent to evade tax. On the contrary, it has ben shown that the petitioner filed declarations of estimated tax for those years and that substantial sums of estimated tax were paid for those years by him and his wife, it appearing that he overpaid his liability for the latter year. The petitioners also argue that the amounts of additions to tax under section 293(b) cannot exceed 50 per cent of any deficiencies set forth in the notices of deficiency. In effect, they argue that the deficiency referred to in section 293(b) is the same as that referred to in section 291(a), namely, the excess of the correct tax over the amount shown on the return, contending that the returns for present purposes are the delinquent returns which were filed in 1952. In Middleton v. Commissioner (C.A. 5), 200 F. 2d 94, affirming a Memorandum Opinion of this Court [10 TCM 592,] it was held that the "deficiency" for purposes of computation of the addition to tax under section 293(b) is not limited by section 271(a), but is the total deficiency represented in that case by the excess of *298 the correct tax over the tax shown on original returns filed, rather than over the tax shown on amended returns later filed. In Charles F. Bennett, 30 T.C. 114, no returns except delinquent returns were filed, and we held that the "deficiency" for purposes of section 293(b) was the correct tax due, rather than the excess of the correct tax over the tax shown on the delinquent returns. We there stated: "Certainly, if instead of fraudulently failing to file returns petitioners had in the first instance filed timely but false returns, the additions for fraud would persist notwithstanding the later filing of amended nonfraudulent returns. Such has been firmly established. [Citing cases.] In George M. Still, Inc., supra, we said (19 T.C. at 1077): "Any other result would make sport of the so-called fraud penalty. A taxpayer who had filed a fraudulent return would merely take his chances that the fraud would not be investigated or discovered, and then, if an investigation were made, would simply pay the tax which he owed anyhow and thereby nullify the fraud penalty. We think Congress has provided no such magic formula to avoid the civil consequences of fraud. * * * "The same reasoning *299 is equally applicable where the fraud is associated with a deliberate failure to file a return in the first instance. * * * Surely, Congress did not intend to provide the "magic formula" to avoid the civil consequences of fraud where no return at all had originally been filed while at the same time withholding it from those who had originally filed a false return. We think a fair and reasonable construction of the revenue laws requires that both situations be treated alike." We hold that in the instant case additions to tax on account of fraud under section 293(b) are in the amount of 50 per cent of the full amount of the tax liability. It may be added that it is well settled that under the Internal Revenue Code of 1939 additions to tax under section 293(b) may be due in addition to additions to tax under section 291(a). See Powell v. Grandquist, supra, and cases cited therein. The petitioners in the stipulation have conceded that there is a deficiency in income tax of $3.43 for 1946 and an addition to tax under section 291(a) for 1947 in the amount of $41.71, as set forth in the notice of deficiency for those years. By amended answers the respondent made claim, pursuant to authority *300 of section 272(e) of the Code, for increased deficiencies in tax, and additions to tax under section 291(a) and section 294(d) for the years 1947 through 1951. Although the burden of proof as to these issues is, of course, upon the respondent (Rule 32, Rules of Practice of this Court), this burden has been discharged inasmuch as the parties have stipulated the correct amount of the net income of the petitioners for each of such years. The correct amounts of the deficiencies in tax and additions to tax under those sections will be computed under Rule 50. The petitioner has paid certain amounts for those years as additions to tax under section 294(d), relating to the estimated tax, and the respondent has claimed additional amounts on account thereof. The record does not disclose what portions of the amounts paid or claimed pertain to section 294(d)(1)(A), relating to failure to file declarations of estimated tax, and what portions relate to section 249(d)(2), having to do with substantial underestimation of estimated tax. Since the petitioners did not file declarations of estimated tax for the years 1947 through 1951, no additions to tax under section 294(d)(2) are due. Commissioner v. Acker, 361 U.S. 87. *301 Accordingly, the petitioners are not liable for any additions to tax under section 294(d)(2), and the proper additions pursuant to section 294(d)(1)(A) will be computed under Rule 50. Decisions will be entered under Rule 50. Footnotes
*. One-half taxable to John J. Finnorn as community income. ↩
**. In the returns for 1945 and 1946 credit was taken for prior payments of estimated tax in the respective amounts of $535 and $905.↩
1. I declare under the penalties of perjury * * * that my delinquency * * * was not due to any intent to violate the law or to evade taxation, but was due to: the fact, first, that when the return for 1945 became due I was involved in the final phases of the case of Damonters Higgins Industries, and although I obtained an extension of time, the press of the case caused me to neglect to complete the return. In 1947, when the 1946 return became due I was again engaged in working up the facts in a highly controversial case and fell behind in the matter of my return, having become thus involved, I unfortunately never caught up with the matter of my returns. * * *
**. One-half of this attributable to the petitioner John J. Finnorn as community income.↩
*. This includes the $337.50 gain derived from sale of stock. ↩
2. Section 293(b) provides that: Fraud. - If any part of any deficiency is due to fraud with intent to evade tax, then 50 per centum of the total amount of the deficiency (in addition to such deficiency) shall be so assessed, collected, and paid, in lieu of the 50 per centum addition to the tax provided in section 3612(d)(2).↩
3. SEC. 271. DEFINITION OF DEFICIENCY. (a) In general. - As used in this chapter in respect of a tax imposed by this chapter, "deficiency" means the amount by which the tax imposed by this chapter exceeds the excess of - (1) the sum of (A) the amount shown as the tax by the taxpayer upon his return, if a return was made by the taxpayer and an amount was shown as the tax by the taxpayer thereon, plus (B) the amounts previously assessed (or collected without assessment) as a deficiency, over - (2) the amount of rebates, as defined in subsection (b)(2), made. SEC. 272(a)(1) If in the case of any taxpayer, the Commissioner determines that there is a deficiency in respect of the tax imposed by this chapter, the Commissioner is authorized to send notice of such deficiency to the taxpayer by registered mail. Within ninety days after such notice is mailed (not counting Saturday, Sunday, or a legal holiday in the District of Columbia as the ninetieth day) the taxpayer may file a petition with the Tax Court of the United States for a redetermination of the deficiency. * * *
(e) Increase of Deficiency after Notice Mailed. - The Tax Court shall have jurisdiction to redetermine the correct amount of the deficiency even if the amount so redetermined is greater than the amount of the deficiency, notice of which has been mailed to the taxpayer, and to determine whether any penalty, additional amount or addition to the tax should be assessed - if claim therefor is asserted by the Commisioner at or before the hearing or a rehearing. SEC. 322(d) Overpayment Found by Tax Court. If the Tax Court finds that there is no deficiency and further finds that the taxpayer has made an overpayment of tax in respect of the taxable year in respect of which the Commissioner determined the deficiency, or finds that there is a deficiency but that the taxpayer has made an overpayment of tax in respect of such taxable year, the Tax Court shall have jurisdiction to determine the amount of such overpayment * * *.↩
4. SEC. 291. FAILURE TO FILE RETURN. (a) In case of any failure to make and file return required by this chapter, within the time prescribed by law or prescribed by the Commissioner in pursuance of law, unless it is shown that such failure is due to reasonable cause and not due to willful neglect, there shall be added to the tax: 5 per centum if the failure is for not more than thirty days with an additional 5 per centum for each additional thirty days or fraction thereof during which such failure continues, not exceeding 25 per centum in the aggregate. The amount so added to any tax shall be collected at the same time and in the same manner and as a part of the tax unless the tax has been paid before the discovery of the neglect, in which case the amount so added shall be collected in the same manner as the tax. * * *
5. Cf. First Trust & Savings Bank of Davenport, Iowa v. United States (C.A. 8), 206 F. 2d 97↩, a case clearly distinguishable from the instant case on its facts, but in which a distinction was drawn between failure to file returns and the understating of income in filed returns.