Estate of Samuel Grobart, Deceased, Doris F. Grobart, Administratrix v. Commissioner.
Estate of Grobart v. Commissioner
Docket No. 66935.
United States Tax Court
T.C. Memo 1961-128; 1961 Tax Ct. Memo LEXIS 222; 20 T.C.M. (CCH) 629; T.C.M. (RIA) 61128; May 9, 1961
*222 Held, a part of the deficiency for each of the years 1944, 1946, 1947, 1948 and 1949 was due to fraud with intent to evade tax within the meaning of Sec. 293(b), I.R.C. 1939. Held, where petitioner filed delinquent returns for the years 1948 and 1949 on a joint basis subsequent to the issuance of a notice of deficiency computed on an individual basis, he is not entitled to the split income provisions. Secs. 51(b)(1) and 12(d). Held, petitioner realized partnership income in the amount of $3,053.53 from Great Falls Hosiery Co. in the year 1944. Held, certain expenses allegedly incurred for employees hired to care for petitioner's two children in the years 1946, 1947, 1948 and 1949 are not deductible as medical expenses under Sec. 23(x). Held, certain additional deductions for charitable contributions for the years 1946, 1947 and 1949, allowed. Held, additions to tax under Sec. 294(d)(1)(A) in the years 1947, 1948 and 1949 for failure to file declarations of estimated tax, sustained. Held, additions to tax under Sec. 294(d)(2) for the years 1944 and 1946 for substantial underestimation of estimated tax, sustained. Held, additions to tax for failure to pay estimated tax *223 for the years 1944 and 1946, sustained. Stanley J. Perzanowski, Esq., for the petitioner. John J. Hopkins, Esq., for the respondent. BRUCE Memorandum Findings of Fact and Opinion BRUCE, Judge: This proceeding involves deficiencies in Federal income tax and additions to tax for the years and in the amounts as follows: Additions to Tax § 294 § 294
Year
Deficiency § 293(b) § 291(a) § 294(d)(2)
(d)(1)(A)
(d)(1)(B)
1944
$1,104.74
$ 6,252.37
$3,126.19
$ 687.49
$42.13
1946
3,494.18
7,197.09
3,598.55
657.42
68.74
1947
60.27
5,480.14
2,740.07
657.62
$ 986.43
1948
5,937.20
10,440.85
5,220.43
1,252.90
1,879.35
1949
116.51
325.59
162.79
39.07
58.61 The issues are: 1. Whether any part of the deficiency for each of the years 1944, 1946, 1947, 1948 and 1949 was due to fraud with intent to evade tax. 2. Whether the delinquent filing by petitioner and his wife of a joint income tax return for each of the years 1948 and 1949, on a date subsequent to the issuance of a notice of deficiency computed on an individual basis and the filing of a petition in the Tax Court entitles *225 petitioner to have his tax computed on the basis of a joint return. 3. Whether petitioner realized partnership income in the amount of $3,053.53 from Great Falls Hosiery Co. during the year 1944. 4. Whether certain expenses allegedly incurred for employees hired to take care of his two children in the years 1946, 1947, 1948 and 1949 are deductible as medical expenses. 5. Whether petitioner is entitled to certain deductions for charitable contributions in addition to the deductions allowed in the statutory notice. 6. Whether petitioner is liable for the additions to tax under section 294(d)(1)(A) for failure to file declarations of estimated tax for the years 1947, 1948 and 1949. 7. Whether petitioner is liable for the additions to tax under section 294(d)(2) for substantial underestimation of estimated tax for the years 1944 and 1946. 8. Whether petitioner is liable for the additions to tax imposed by section 294(d)(1)(B) for failure to pay his estimated tax for the years 1944 and 1946. The respondent has conceded error in determining additions to tax under section 294(d)(2) for substantial underestimation of estimated tax for the years 1947, 1948 and 1949. The petitioner *226 has conceded that the additions to tax under section 291(a) for failure to file a timely income tax return for each of the years 1944, 1946, 1947, 1948 and 1949 were properly determined. The parties have stipulated that the section 291(a) additions to tax should be recomputed by giving credit for income taxes withheld and payments made by petitioner under declarations of estimated tax. This stipulation will be given effect by the computation under Rule 50. Findings of Fact The stipulate facts have been so found and are incorporated herein by this reference. Samuel Grobart, hereinafter referred to as the petitioner, was born in Austria on March 17, 1902, became a United States citizen through his father's naturalization in 1910, and died on October 15, 1960, after the trial in this case. By order of this Court, dated January 6, 1961, the name of the petitioner in this proceeding was changed from "Samuel Grobart" to "Estate of Samuel Grobart, deceased, Doris F. Grobart, Administratrix." Doris F. Grobart was qualified in the Superior Court of New Jersey, Chancery Division, as administratrix of petitioner's estate on November 29, 1960, and letters of administration were issued to *227 her on December 2, 1960. At the time of trial petitioner was married and resided with his wife and two children at 190 Derrom Avenue, Paterson, New Jersey, the petitioner's family residence since it was purchased in 1946. The names and birth dates of his two children are Bernard, born January 10, 1945, and Phyllis, born April 4, 1946. Petitioner's formal education consisted of grammar school and high school. He attended New Jersey Law School (now part of Rutgers University) and was one course short of receiving a law degree. The petitioner was active in the conduct of various businesses since the early 1920's. At one time or another he was engaged in the business of real estate, chemicals, dyeing, and hosiery. In 1932 he served on the Paterson Board of Education; in 1934 he served on the Paterson Board of Public Works; in 1938 he became president of the Paterson Board of Finance and served in said capacity for two years; in 1938 and 1939 he headed the local United Jewish Appeal; in 1940 he was a Presidential Elector for New Jersey, and he was for a time a director of Barnert Hospital of Paterson. He served on the draft board from 1942 through 1953, and on the Passaic Valley *228 Water Commission from 1949 through 1953. Petitioner and his wife, Doris F. Grobart, were married and lived together during the taxable years here involved. Doris did not earn any taxable income during said years and did not file a separate Federal income tax return for said years. Benjamin Glazer, a certified public accountant, hereinafter referred to as Glazer, was employed by the petitioner and petitioner's brother, Meyer Grobart. He kept the business records for Grobart family enterprises during the years as follows: 1944
1945
1946
1947
1948
1949
Samuel & Meyer Grobart Co.
X
X
X
X
X
Anbern Security Company
X
Estate of Bertha Grobart
X
Grobart Mills
X
X
X
X
X
X
Meyer Grobart & Co.
X
X
X
X
During the year 1944 the petitioner received taxable income (excluding the taxable income received from Great Falls Hosiery Co.) and was entitled to itemized deductions as follows: Salary and Wages: Anbern Security Company
$ 2,600.00
Clark-Market Corporation
624.00
Groco Security Company
775.00
$ 3,999.00
Interest
225.00
Capital Gain: 225 Main Street
$ 1,250.00 @ 100%
1,250.00
Anbern Security Co.
36,049.71 @ 50%
18,024.86
19,274.86
Estate of Bertha Grobart
10.58
Partnership Income: Samuel and Meyer Grobart
$ 342.63
Grobart Mills
5,415.02
Plaza Glove Company
438.74
6,196.39
Total
$29,705.83
Deductions: Contributions
$ 402.00
Taxes
93.25
Miscellaneous
1,928.74
2,423.99
Net Income
$27,281.84
*229 Glazer timely prepared an income tax return for the petitioner for the year 1944. In preparing this return, Glazer ascertained from the office of William Surosky, an attorney and accountant who handled Meyer Grobart's work and is since deceased, that the petitioner had realized, during 1944, taxable income in the amount of $3,053.53 from a partnership known as Great Falls Hosiery Co. Glazer included the said Great Falls Hosiery Co. partnership income in the Federal income tax return he prepared for the petitioner for the year 1944. After preparing this return, Glazer went over the various items, in detail, with the decedent. The delinquent income tax return for the year 1944, which the petitioner filed on April 30, 1959, shows that the petitioner realized taxable partnership income from Great Falls Hosiery Co. during 1944 in the amount of $3,053.53. The net worth statement which the petitioner submitted to the Internal Revenue Service on June 2, 1952, shows that as of December 31, 1944, the petitioner's interest in Great Falls Hosiery Co. was $3,053.53. During the year 1946, the petitioner received taxable income and was entitled to itemized deductions as follows: Salary and Wages - New Jersey General Security Co.
$ 5,200.00
Rental Income
993.30
Capital Gain from Grobart Mills @ 50%
20,509.34
Partnership Income: Grobart Mills
$ 3,477.37
Meyer and Samuel Grobart
562.45
Plaza Glove Company
12,733.61
16,773.43
Total
$43,476.07
Deductions: Contributions
$ 3,370.00
Interest
740.00
Taxes
1,459.54
Miscellaneous
1,190.00
6,759.54
Net Income
$36,716.53
*230 During the year 1947, the petitioner received taxable income and was entitled to itemized deductions as follows: Salary and Wages - New Jersey General Security Co.
$ 5,200.00
Dividends - Dundee Water Power & Land Co., Inc.
1,344.00
Rental Income
1,610.30
Partnership Income: Grobart Mills
$ (169.79)
Meyer and Samuel Grobart
796.82
Plaza Glove Company
7,049.17
Meyer Grobart & Company
23,111.74
30,787.94
Total
$38,942.24
Deductions: Contributions
$ 3,877.00
Interest
1,240.00
Taxes
2,545.90
Miscellaneous
1,993.64
9,656.54
Net Income
$29,285.70
During the year 1948, the petitioner received taxable income and was entitled to itemized deductions as follows: Salary and Wages: New Jersey General Security Co.
$ 5,200.00
City of Paterson
333.28
$ 5,533.28
Dividends - Dundee Water Power & Land Co., Inc.
7,177.99
Rental Income
1,475.54
Partnership Income: Grobart Mills
$ 818.78
Meyer Grobart and Company
44,593.46
Meyer and Samuel Grobart
(223.37)
45,188.87
Capital Loss
(1,000.00)
Total
$58,375.68
Deductions: Contributions
$ 4,084.60
Interest
1,600.00
Taxes
2,778.60
Miscellaneous
1,773.69
10,236.89
Net Income
$48,138.79
*231 During the year 1949, the petitioner received taxable income and was entitled to itemized deductions as follows: Salary & Wages - New Jersey General Security Co.
$ 928.58
Dividends - Dundee Water Power & Land Co., Inc.
3,360.00
Rental Income
1,005.63
Partnership Income: Grobart Mills
$ 1,011.32
Meyer Grobart and Company
11,867.74
12,879.06
Capital Gain: Liquidation of New Jersey General Security Co.: Received in liquidation, February 1949
$23,182.45
Cost of stock, July 28, 1942
500.00
Recognized gain
$22,682.45
Long-term gain taken into account @ 50%
$11,341.23
Distributable Share of long-term capital gain from
Grobart Mills $3,944.18 taken into account @ 50%
1,972.09
$13,313.32
Less: Capital Loss carryover from 1948
$ 1,239.41
Net Capital Gain
$12,073.91
Ordinary Loss - Re land leased as a parking lot: Selling price - August 1, 1949
$23,000.00
Cost in 1932
$40,300.00
Selling Expense
25.30
40,325.30
Loss
(17,325.30)
Total
$12,921.88
Deductions: Contributions
$ 563.10
Interest
1,697.89
Taxes
3,066.26
Miscellaneous
1,546.02
6,873.27
Net Income
$ 6,048.61
*232 The records of the office of the district director of internal revenue at Newark, New Jersey, at which office any returns filed by the petitioner would be recorded, show that no Federal income tax return was filed by the petitioner for the years 1944, 1946, 1947, 1948, or 1949, prior to April 30, 1959. On February 1, 1957, a notice of deficiency covering the years ended December 31, 1944, 1946, 1947, 1948, and 1949 was sent to the petitioner by registered mail. This notice of deficiency was computed on the basis of an individual tax rate. At some date prior to April 13, 1959, there were prepared by the Internal Revenue Service substitutes for returns of the petitioner, individually, for the years 1948 and 1949. On April 30, 1959, after this case was docketed in this Court, the petitioner filed Federal income tax returns for the years 1944, 1946, and 1947, and at the same time filed joint Federal income tax returns with his wife Doris, for the years 1948 and 1949, with the district director of internal revenue, Newark, New Jersey. The records of the Newark office, Internal Revenue Service, failed to disclose the filing of declarations of estimated tax by the petitioner for *233 the years 1947, 1948, and 1949. The petitioner filed declarations of estimated tax for the years 1944 and 1946. Income taxes withheld and payments made on declarations of estimated tax were as follows: Year 1944
Income Tax Withheld
$ 520.00
Payments on Declaration of
Estimated Tax: April 4, 1944
$ 263.32
June 15, 1944
263.32
526.64
$1,046.64
Year 1946
Payments on Declaration of
Estimated Tax: March 15, 1946
$1,145.70
June 11, 1946
1,145.70
September 15, 1946
1,145.70
$3,437.10
Year 1948
Income Tax Withheld
$ 667.10
Year 1949
Income Tax Withheld
$ 71.00
For each of the years 1944 through 1949, Glazer, the petitioner's accountant, prepared income tax returns from books and records in Glazer's custody, and from information supplied to him by the petitioner and others. Glazer then discussed each return in detail with the petitioner, gave him the original and a copy (retaining an identical worksheet for himself) for signature and filing with the necessary check. The income tax returns which Glazer submitted to petitioner for the years 1944 and 1946 were prepared on the assumption that payments on estimated tax had been made *234 in accordance with the declaration of estimated tax which Glazer had previously prepared and given to the petitioner. The 1944 and 1946 returns prepared by Glazer showed payments as having been made on estimated tax for those years in the respective amounts of $15,279.62 and $42,905.29. The petitioner did not give Glazer any reason to believe that the payment of estimated tax as shown on the returns prepared by Glazer had not been made. Likewise, for the years 1947 and 1948 Glazer inserted the estimated tax payment figures in each of the returns he prepared for petitioner on the assumption that petitioner had made the payments in accordance with a declaration of estimated tax previously prepared by Glazer and given to petitioner for signature, filing and payment. Glazer prepared a declaration of estimated tax for the petitioner for the year 1949 which showed no tax due. This was because, according to Glazer's records, there was a credit due from an overpayment of 1948 tax. On the basis of this declaration the return prepared by Glazer for petitioner for 1949 showed payments of estimated tax of $2,954.08. The records of the district director of internal revenue at Newark, New Jersey, *235 disclose that the petitioner made no payments on estimated tax for the years 1947, 1948, and 1949. Petitioner's tax return for the year 1945 was audited by internal revenue agent Robert Hundemann in the presence of both petitioner and Glazer. Hundemann requested the verification of the claimed payments on estimated tax. He was shown the retained copy of the 1944 return which Glazer had prepared for the petitioner, which showed an overpayment of $5,872.42, as verification for a portion of the claimed payment on estimated tax for the year 1945. Hundemann accepted said verification on the basis that the 1944 tax return had been filed and the tax paid. In 1951, when revenue agent Rich examined the partnership returns of Grobart Mills, of which the petitioner was a partner, he was shown and he used Glazer's retained copies of petitioner's 1947 and 1948 income tax returns while awaiting the original returns which he had requested from Internal Revenue Service records. The petitioner, with whom Rich was working on this audit, gave him no indication that his original returns had never been filed. On March 14, 1952, a criminal information was filed with the United States District Court, *236 District of New Jersey, wherein the petitioner was charged with willfully failing to file income tax returns with the collector of internal revenue for the years 1948 and 1949. On February 27, 1953, the petitioner entered a plea of nolo contendere to the count charging that he willfully failed to file an income tax return for the year 1949. The petitioner, on January 30, 1952, at about the date that the United States Attorney was processing the criminal charge against him for willful failure to file an income tax return for the years 1948 and 1949, under section 145(a) of the 1939 Code, made payments to the collector of internal revenue for income taxes for the years and in the amounts as follows: Year
Amount
1944
$11,458.10
1946
10,957.08
1947
10,960.27
1948
14,944.50
1949
534.66
For the years 1948 and 1949 these payments have been credited against petitioner's income tax liability for the years designated, in computing the deficiencies determined in the notice of deficiency. For the years 1944, 1946 and 1947, these payments have been credited against petitioner's income tax liability to the extent of $11,400, $10,900, and $10,900, respectively, the *237 difference between these amounts and the amounts paid representing interest. The petitioner had a net worth as of December 31 of each of the years 1944 to 1949, inclusive, without considering amounts in the bank accounts of his wife, or the United States Savings Bonds held in the names of his children, his wife, or himself, jointly, as follows: ASSETS
12/31/44
12/31/45
12/31/46
12/31/47
12/31/48
12/31/49
Cash - First National Bank
$ 6,922.22
$ 994.83
$ 853.32
$ 1,350.92
$ 4,743.96
$ 382.96
Partnership - Meyer & Samuel Grobart
7,487.91
5,124.05
5,686.50
6,483.32
1,281.11
Partnership - Plaza Glove Co.
2,500.00
2,500.00
2,500.00
Partnership - Grobart Mills
22,893.24
19,745.77
3,421.94
2,418.48
2,514.50
2,922.22
Partnership - Great Falls Hosiery Co.
3,053.53
Partnership - Meyer Grobart & Co.
10,000.00
10,000.00
33,111.74
49,079.46
49,079.46
Land - 49-51 Prospect St., Paterson, N.J.
37,500.00
37,500.00
37,500.00
37,500.00
37,500.00
Land - 44-46 VanHouten Ave., Paterson,
N.J.
2,800.00
2,800.00
2,800.00
2,800.00
2,800.00
Residence - Deal, N.J.
10,500.00
10,500.00
10,500.00
10,500.00
10,500.00
10,500.00
N.J. General Security Shares
500.00
500.00
Improvements at Deal, N.J.
23,000.00
23,000.00
23,000.00
23,000.00
23,000.00
Clark Market Corp. stock
12,500.00
Residence - 190 Derrom Ave
38,500.00
38,500.00
38,500.00
38,500.00
Improvements - 190 Derrom Ave
4,000.00
10,000.00
10,000.00
10,000.00
N.J. General Security Shares (5 shares)
500.00
500.00
500.00
500.00
500.00
Groco Security Co. shares
6,750.00
Dundee Water Power & Land Investment
11,750.00
11,750.00
11,750.00
11,750.00
11,750.00
Mador Realty Co. Investment
9,250.00
9,250.00
9,250.00
Bernbeth Security Co. Investment
18,000.00
Automobile
800.00
800.00
800.00
3,400.00
3,400.00
3,400.00
Life Insurance - Cash Surrender Value
8,000.00
8,500.00
9,000.00
9,500.00
10,000.00
10,500.00
TOTAL ASSETS
$122,706.90
$134,214.65
$160,811.76
$200,064.46
$214,819.03
$187,284.64
LIABILITIES
Notes Payable - First National Bank
$ 11,000.00
$ 17,100.00
$ 14,400.00
$ 38,400.00
$ 30,000.00
$ 33,216.35
Mortgage - F.D.I.C.
20,845.43
19,345.43
17,845.43
Loan - Mutual Insurance Co.
2,000.00
3,000.00
3,000.00
3,000.00
4,000.00
5,500.00
New York Income Taxes
205.18
Mortgage - Citizens Trust Co.
12,000.00
11,000.00
10,000.00
9,000.00
Loans Payable - Meyer & Samuel Grobart
500.00
Mortgage - First National Bank
10,000.00
9,000.00
Loans Payable - Meyer Grobart & Co.
3,075.00
TOTAL LIABILITIES
$ 33,845.43
$ 39,445.43
$ 47,950.61
$ 65,475.00
$ 53,000.00
$ 47,716.35
Net Worth of Samuel Grobart
$ 88,861.47
$ 94,769.22
$112,861.15
$134,589.46
$161,819.03
$139,568.29
*238 The bank accounts of petitioner and his wife showed the following balances as of March 15 of the years 1945 to 1950, inclusive, the dates on which his Federal income tax returns should have been filed: Doris Grobart
Samuel Grobart
Checking
Savings
Checking Acct.
Acct.
Acct.
Total
3/15/45
$ 2,849.38
$ 430.88
$1,869.53
$ 5,149.79
3/15/46
8,453.72
703.28
464.72
9,621.72
3/15/47
5,157.38
136.49
1,538.84
6,832.71
3/15/48
27,643.96
12,149.43
3,020.25
42,813.64
3/15/49
5,189.34
454.42
1,200.52
6,844.28
3/15/50
4,977.97
1,897.64
1,625.24
8,500.85
United States Savings Bonds, all of which were still outstanding as of December 31, 1950, were purchased during the years and in the names of petitioner, his wife, Doris, and his two minor children, as follows: 1946
1947
1948
1949
1950
Phyllis Grobart or Doris Grobart
$150.00
$ 225.00
$ 75.00
$ 93.75
Bernard Grobart or Samuel Grobart
375.00
75.00
18.75
Bernard Grobart or Doris Grobart
150.00
225.00
18.75
75.00
Phyllis Grobart or Samuel Grobart
750.00
375.00
Total
$300.00
$1,575.00
$18.75
$600.00
$112.50
$2,606.25
*239 The petitioner's living expenses for the years 1944 through 1949 were as follows: Year
Amount
1944
$25,000
1945
30,000
1946
30,000
1947
30,000
1948
30,000
1949
30,000
For the years 1946, 1947, 1948 and through 1949 petitioner claimed he made payments relative to medical expenses of $4,105, $3,927.50, $3,165, and $2,830.45, respectively. Of these amounts, $2,912, $2,840, $2,600, and $2,500, for the respective years, were claimed as paid for certain full-time employees who attended his children. These employees were not registered nurses, but were more like practical nurses or nursemaids. During the years 1946 through 1949 they continuously took general care of petitioner's two infant children. They did not cook nor did they do any housework. During 1947 petitioner's son had a tonsillectomy and adenoid operation which was followed by a virus infection. During this period, the petitioner employed registered nurses, in addition to the other full-time employees, to take care of his son. During the years 1946 through 1949, the petitioner, in addition to the aforementioned employees who took care of his children, had two domestic employees, a part-time *240 gardener for his home in Paterson, and a full-time caretaker for his seashore home at Deal, New Jersey, which was acquired in 1944. During the years 1946 through 1949, petitioner made the following expenditures in payment of medical expenses: 1946
1947
1948
1949
Doctors: Sandor A. Levinsohn
$ 66
$ 95 $171
$ 21
Alfred E. Fischer
30
Francis Mitchell
10
Louis G. Shapiro
5
15
75
Samuel Fisher
5
10
Alfred M. Hellman
400
10
Harry Katz
40
5
10
Aaron Markowitz
28
47
Louis Markowitz
75
Murray H. Bass
100
Michael W. Silver
10
15
Edna C. Friedman
5
Joseph Shapiro
8
Jacob Roemer
50
R. Loewit
16
Hospitals: Barnert Memorial Hospital
55.80
Lenox Hill Hospital
10
Nurses (Registered): Dorothy Kopf
10
Edythe De Maria
25
Anna Schermer
25
Totals $516
$483.80 $295 $153
The petitioner made contributions to the Daughters of Miriam, a charitable institution, in the years 1946, 1947 and 1949 in the amounts of $100, $100 and $50, respectively. A part of the deficiency for each of the years 1944, 1946, 1947, 1948 and 1949 was due to fraud with intent to evade tax. *241 Opinion For each of the years in issue Glazer, the accountant for petitioner and his several business enterprises, prepared income tax returns for the petitioner from books and records in Glazer's custody and from information supplied to him by the petitioner and others. Glazer then discussed each return in detail with the petitioner, giving him the original and a copy for signature and filing, and retaining an identical worksheet for himself. In each succeeding year Glazer's preparation of the petitioner's income tax return and declaration of estimated tax was based on the assumption that the petitioner had filed his return and declaration and paid his taxes in accordance therewith. In fact, however, no Federal income tax returns were filed by petitioner for the years 1944, 1946, 1947, 1948, and 1949, prior to April 30, 1959. Respondent has determined additions to tax for fraud under section 293(b). [1] Considering the whole record, we are satisfied that petitioner's failure to file was deliberate and fraudulent with intent to evade tax and accordingly, respondent's determination of additions to tax under section 293(b) is sustained, the amounts thereof to be recomputed under *242 Rule 50. In Fred N. Acker, 26 T.C. 107, a case in which we held that section 293(b) was properly applied where taxpayer for a number of years failed to file returns, we stated at pages 111-112: The most severe of the civil sanctions is that imposed under section 293(b) for fraud. A taxpayer's failure to perform any of his duties incident to the system, even through negligence, may bring into play one or more of the lesser sanctions; but when such breach of duty is combined with a willful and positive attempt to defeat the statute or evade tax, in any manner or by any means, then there exists an offense of much more serious character, which Congress has designated in section 293(b) by the term "fraud with intent to evade tax." The sanction imposed for this offense, by which there is added to the tax *243 an amount equal to 50 per cent of the total amount of the deficiency, is the capstone of the system of civil sanctions. Such willful attempt to defeat the statute or evade tax may be inferred from any conduct calculated to mislead or conceal; and it may be found not only in a situation where one of the methods employed was to file an intentionally false return, but also where the method involved a willful failure to make any return whatever. This Court has, in a number of cases, approved the imposition of the sanction under section 293(b), where no return was filed. See, for example, A. Raymond Jones, 25 T.C. 1100; Arthur M. Slavin, 43 B.T.A. 1100, 1110; Ollie V. Kessler, 39 B.T.A. 646; Pincus Brecher, 27 B.T.A. 1108. See also Powell v. Granquist, 252 F. 2d 56, wherein the Court of Appeals for the Ninth Circuit indicated the knowing refusal to make any statement of income for a number of years would of itself seem to be at least equally as important in evidencing intent to defraud the Government as the consistent and substantial understatement of income for several years. In the instant case, petitioner's failure *244 to file returns for the five years in issue was "combined with a willful and positive attempt to defeat the statute or evade tax." Petitioner was an astute and well educated businessman involved in a variety of businesses. He was only one course short of receiving a law degree. There can be no question that he fully realized his duty to file Federal income tax returns. We have found that in fact he did file declarations of estimated tax for the years 1944 and 1946, and his Federal income tax return for the year 1945. Year after year petitioner's returns were prepared by his accountant, discussed in detail, but not filed. His only excuse was that he was living too high to pay his taxes. There are other factors which even more specifically point to petitioner's fraudulent intent. Petitioner filed his 1945 return and claimed thereon a credit for taxes allegedly paid in 1944. When verification of the claimed payments of estimated tax was requested upon audit by the internal revenue agent, the agent was shown the retained copy of the 1944 return which had not been filed. Contrary to petitioner's contention, the evidence indicates that petitioner was present when the retained copy was *245 offered, or at least knew that it had been presented to the agent and was aware of the purpose for which it had been offered. Petitioner's conduct was "calculated to mislead or conceal." In 1951, when another revenue agent examined partnership returns of Grobart Mills in petitioner's presence, he was shown the retained copies of petitioner's 1947 and 1948 income tax returns, without any indication being given by petitioner that these returns had not been filed. Jones v. Commissioner, 259 F. 2d 300 (C.A. 5), reversing on this issue 25 T.C. 1100, relied upon by petitioner, is distinguishable. The Court of Appeals for the Fifth Circuit therein found that there was a willful failure to file, but that there was no evidence of an intent to defraud. In the instant case an intent to defraud, independent of the mere willful failure to file, is clearly evidenced by petitioner's conduct of concealment. Prior to April 30, 1959, the petitioner did not file income tax returns for the years 1948 and 1949. On March 14, 1952, a criminal information report was filed with the United States District Court, District of New Jersey, wherein petitioner was charged with willfully *246 failing to file income tax returns for the year 1949. On February 1, 1957, statutory notice was sent to the petitioner individually wherein it was determined inter alia that he was liable for deficiencies in income taxes and additions to tax for those years. The notice of deficiency computed the tax on the basis of an individual return. On April 30, 1959, after the case was docketed in the Tax Court, the petitioner and his wife filed joint returns for these years, claiming the benefit of a joint income tax computation. Petitioner contends that he is entitled to elect the benefits of the so-called split income provisions and that there is nothing in section 51(b) or the regulations promulgated thereunder which states that a joint return, to be effective for split income purposes, must be timely filed. Section 51(b)(1) provides that "A husband and wife may make a single return jointly." This provision has been construed on numerous occasions to preclude the change of election from the joint return to individual returns, or vice versa, after the due date of the return. See Grant v. Rose, 24 F. 2d 115 (N.D. Ga.), affirmed on this issue 39 F. 2d 340 (C.A. 5). *247 In that case the District Court stated: There is nothing in the law to prohibit the choice of joint or separate returns according to the result on the taxes to be paid, although husband and wife actually have kept their affairs entirely separate. On the other hand, there is nothing in the act to extend the right of choice beyond the time for making the returns. It is not unreasonable to claim a right to substitute one form of return for the other up to the last day for making returns, but, after that, and especially after the returns have been reviewed and assessments made, there are strong administrative reasons for not permitting the upsetting of the whole basis of calculation. * * * This statement of the District Court is equally applicable to the instant situation where no returns at all were filed by the petitioner until after the notice of deficiency. Section 51(b)(1), while permitting a husband and wife to file a return jointly, inherently requires that such election be timely made. Accordingly, since petitioner, together with his wife, did not timely file joint income tax returns for the years 1948 and 1949, he is not entitled to the split income features of section 12(d) *248 in the tax computation for the years 1948 and 1949. Respondent has determined that petitioner realized partnership income of $3,053.53 from Great Falls Hosiery Co. in the year 1944. Petitioner contends that he could not have realized this income as the partnership did not exist until 1946 when the trade name of Great Falls Hosiery Co. was registered. We do not agree with petitioner's contention. The records of petitioner's accountant show that when he was preparing petitioner's Federal income tax return at some date prior to its due date of March 15, 1945, he was advised by another accounting firm that the petitioner had realized $3,053.53 in income from Great Falls Hosiery Co. This information was recorded by the accountant and discussed with the petitioner at some time prior to 1946. That the partnership existed in 1944 is further shown by the net worth statements which petitioner submitted to the Internal Revenue Service in 1952. In the statement covering the year 1944 the petitioner included this partnership interest and valued it at the amount of money he realized thereon in that year. In view of the undisputed records of petitioner's own accountant, Meyer Grobart's testimony *249 that Great Falls Hosiery Co. did not exist in 1944 is not persuasive. Likewise, the fact that the Great Falls Hosiery Co. trade name was not registered until 1946 does not seem to be of controlling significance as to the prior existence of the company. Accordingly, we hold that petitioner has failed to meet his burden of proving that the respondent erred in determining that he realized partnership income in 1944 in the amount of $3,053.53 from Great Falls Hosiery Co. For the years 1946 through 1949 petitioner claimed as medical expense deductions under section 23(x), [2] expenditures allegedly incurred for doctors, registered nurses, hospitals, drugs, and for certain employees who took care of his two infant children during those years. Some of these claimed medical expenses would fail for lack of substantiation; however, we consider here only those expenses allegedly incurred for the employees who cared for the two children, since absent those expenses, petitioner's claimed medical expenses for none of the years in issue exceed 5 percent of petitioner's adjusted gross income, as required by the statute. *250 Section 23(x) provides for the deduction of expenses paid during the taxable year for medical care of the taxpayer, his spouse, or a dependent. The term "medical care" includes "amounts paid for the diagnosis, cure, mitigation, treatment, or prevention of disease, or for the purpose of affecting any structure of function of the body." The question of substantiation aside, we are unable to find on the record presented that the expenses allegedly incurred for the care of petitioner's two children were for "medical care." Petitioner's children were born in 1945 and 1946. While they were not entirely healthy, petitioner points to only one specific illness, to wit, the son's tonsillectomy and adenoid operation in 1947, which was followed by a virus infection. While petitioner's employees did not cook or clean, they provided continuous care, their services not being limited to periods of illness. In fact, during the period following the boy's operation registered nurses were hired to attend him. Furthermore, petitioner's use of nursemaids seems in harmony with his pattern of living throughout these years, for his employees included two other domestic employees, together with a full-time *251 caretaker for his shore home and a gardener for his Paterson home. Accordingly, we are of the view that petitioner's employees were little more than nursemaids or practical nurses employed to render general care to his young children. Such expenses are personal and do not qualify as deductible medical expenses. George B. Wendell, 12 T.C. 161. The petitioner has claimed additional deductions for charitable contributions under section 23(o) for the years 1946 to 1949 as follows: 1946, $100; 1947, $100; 1948, $333.28; and 1949, $50. The only documentary evidence submitted to substantiate the above claims was a check for $50 showing a payment in 1949 to the Daughters of Miriam, a charitable organization. Respondent concedes that this is properly deductible. As to the deductions for 1946 and 1947, Doris, referring to certain check stubs, testified that she made contributions to the same organization in the specified amounts. We have no reason to discredit her testimony that such contributions were made and accordingly these additional deductions are allowed. With respect to the claimed deduction for 1948, Doris testified that petitioner endorsed his checks from the *252 City of Paterson to local hospitals, orphan asylum, or any charities in Paterson. He was employed at the rate of $500 per year, but only worked 8 months, therefore resulting in the alleged deduction of $333.28. Her testimony fails to specify the amounts or payees, and totally lacks documentary substantiation. Accordingly, the additional claimed deduction for 1948 is not allowed. Respondent has imposed additions to tax under section 294(d)(1)(A) of the 1939 Code for failure to file declarations of estimated tax for the years 1947, 1948, and 1949. The facts affirmatively show that petitioner failed to file such declarations and he has not introduced any evidence of reasonable cause for his failure to so file. Accordingly, respondent's determination of additions to tax under section 294(d)(1)(A) for the years 1947, 1948, and 1949, is sustained, the amounts thereof to be recomputed under Rule 50. Under Commissioner v. Acker, 361 U.S. 87 (1959), the addition to tax provided by section 294(d)(2) for substantial underestimation of estimated tax cannot be asserted where no declaration of estimated tax was filed, and respondent concedes that section 294(d)(2) is not applicable *253 to the years 1947, 1948, and 1949. However, declarations of estimated tax were filed for 1944 and 1946. Since petitioner has not introduced any evidence in support of his allegation of error that he is not liable for substantial underestimation of estimated tax as provided by section 294(d)(2) for the years 1944 and 1946, the respondent's determination of additions to tax under section 294(d)(2) with respect to those years is sustained, the amounts thereof to be recomputed under Rule 50. Finally, respondent has determined that petitioner failed to pay all his estimated tax for the years 1944 and 1946 and has assessed additions to tax for those years under section 294(d)(1)(B). The amount which petitioner did pay on estimated tax for those years has been stipulated and is set forth in our findings. Petitioner has not introduced any evidence to support his allegation of error with respect to this issue and, absent reasonable cause, respondent's determination of additions to tax for the years 1944 and 1946 under section 294(d)(1)(B) is sustained, the amounts thereof to be recomputed under Rule 50. Decision will be entered under Rule 50. Footnotes
1. SEC. 293. ADDITIONS TO THE TAX IN CASE OF DEFICIENCY. * * *
(b) Fraud. - If any part of any deficiency is due to fraud with intent to evade tax, then 50 per centum of the total amount of the deficiency (in addition to such deficiency) shall be so assessed, collected, and paid, in lieu of the 50 per centum addition to the tax provided in section 3612(d)(2).↩
2. SEC. 23. DEDUCTIONS FROM GROSS INCOME. In computing net income there shall be allowed as deductions: * * *
(x) Medical, Dental, Etc., Expenses. - Expenses paid during the taxable year, not compensated for by insurance or otherwise, for medical care of the taxpayer, his spouse, or a dependent specified in section 25(b)(3) - (1) If neither the taxpayer nor his spouse has attained the age of 65 before the close of the taxable year, to the extent that such expenses exceed 5 per centum of the adjusted gross income; * * * * * *
The deduction under this subsection shall not be in excess of $1,250 multiplied by the number of exemptions allowed under section 25(b) for the taxable year (exclusive of exemptions allowed under section 25(b)(1)(B) or (C)), with a maximum deduction of $2,500, except that the maximum deduction shall be $5,000 in the case of a joint return of husband and wife under section 51(b). The term "medical care", as used in this subsection, shall include amounts paid for the diagnosis, cure, mitigation, treatment, or prevention of disease, or for the purpose of affecting any structure or function of the body (including amounts paid for accident or health insurance). The determination of whether an individual is married at any time during the taxable year shall be made in accordance with the provisions of section 51(b)(5).↩