Joseph A. Cirillo and Martha R. Cirillo v. Commissioner.
Cirillo v. Commissioner
Docket No. 79981.
United States Tax Court
T.C. Memo 1961-192; 1961 Tax Ct. Memo LEXIS 157; 20 T.C.M. (CCH) 956; T.C.M. (RIA) 61192; June 29, 1961
*157 Held, a part of the deficiency for each of the years 1945 to 1954, inclusive, was due to fraud with intent to evade tax within the meaning of section 293(b), I.R.C. 1939, and section 6653(b), I.R.C. 1954. Held, petitioner Martha R. Cirillo is not liable for the additions to tax under section 293(b), I.R.C. 1939, and section 6653(b), I.R.C. 1954. Held, additions to tax under sections 293(b) and 6653(b) are based upon the correct tax liabilities without regard to credit for income taxes withheld. Held, petitioners are not entitled to credit against additions to tax for overpayment for the year 1948. James C. Larrimer, Esq., Frick Bldg., Pittsburgh, Pa., for the petitioners. David L. Ketter, Esq., for the respondent. BRUCE Memorandum Findings of Fact and Opinion BRUCE, Judge: This proceeding involves deficiencies in Federal income tax and additions to tax for the years and in the amounts as follows: Deficiencies
Additions to Tax
1939 Code
Income § 294 § 294
1954 Code
Year
Tax § 291(a)
(d)(1)(A)
(d)(2) § 293(b) § 6653(b)
1945
$100.60
$ 25.15
$322.00
1946
24.60
6.15
287.50
1947
59.99
15.00
339.60
1948
281.57
1949
12.80
3.20
313.60
1950
86.68
21.67
377.24
1951
134.66
33.67
$12.12
471.68
1952
536.38
134.28
48.35
$32.23
764.16
1953
658.49
222.00
79.92
53.28
951.60
1954
356.82
52.36
33.97
$740.27
Petitioners *158 have conceded liability for the deficiencies in tax and additions to tax under sections 291(a) and 294(d)(1)(A) and respondent has conceded error in determining the additions to tax under section 294(d)(2), Internal Revenue Code of 1939. The issues for decision are: (1) whether petitioners are liable for the additions to tax for fraud in each of the years 1945 to 1953, inclusive, and for the year 1954, under the provisions of section 293(b), Internal Revenue Code of 1954, respectively; (2) whether petitioner Martha R. Cirillo is jointly and severally liable for the additions to tax under sections 293(b) and 6653(b); (3) whether additions to tax under sections 293(b) and 6653(b), where tax returns were not timely filed, are based upon the correct tax liabilities less the amounts of tax withheld or upon the total tax deficiency without regard to any credit for income taxes withheld; and (4) whether petitioners are entitled to a credit against any additions to tax determined in the year 1948 for the excess of income taxes withheld at the source over petitioners' correct tax liability for that year. Findings of Fact The stipulated facts are so found and are incorporated herein by this *159 reference. Joseph A. and Martha R. Cirillo, husband and wife, were married in 1942, are the parents of a daughter born in 1945, and live with their daughter in Pittsburgh, Pennsylvania. Joseph A. Cirillo, hereinafter referred to as petitioner, was born in Italy on February 16, 1906, and, with his parents, emigrated in 1913 to the United States, where he obtained citizenship by reason of his parents' naturalization. Petitioner attended and was graduated from Pennsylvania State University in June 1929. In 1933 he was graduated from Duquesne University with a degree of bachelor of laws and successfully passed the Pennsylvania state bar examination and was admitted to practice law in the year 1940. During the years 1936 to 1938 petitioner was employed as a compensation adjuster by the Pennsylvania State Workmen's Insurance Fund. During the years 1940 to 1945, petitioner was employed full-time as an assistant city solicitor in the legal department of the City of Pittsburgh, Pennsylvania. On March 1, 1946, petitioner transferred to the legal department of Allegheny County, Pennsylvania, as a full-time assistant county solicitor, which position he held during each of the years 1946 to 1954. *160 Petitioner's principal work as assistant city solicitor and assistant county solicitor was the handling of sheriff's sales or foreclosures of real estate for nonpayment of local real estate taxes. During the years 1951 to 1954, petitioner also served as solicitor for Indiana Township, Pennsylvania, at an annual retainer of $500 in the years 1951 and 1952, and an annual retainer of $1,000 in the years 1953 and 1954. Petitioner, during the years 1945 to 1954, received as wages or salary from the City of Pittsburgh and County of Allegheny, Pennsylvania, the gross amounts set forth below for each year, from which amounts there were deducted and withheld by said employers Federal income taxes and pension fund contributions in the amounts set forth for each year. Gross Salary
Amounts Withheld
City of
County of
Pension
Income
Year
Pittsburgh
Allegheny
Fund
Tax
1945
$3,999.84
$120.00
$ 543.40
1946
700.00
$4,000.00
120.00
550.40
1947
5,136.00
155.00
619.20
1948
5,856.00
180.00
646.00
1949
6,000.00
180.00
614.40
1950
6,150.00
180.00
667.80
1951
6,325.00
177.50
808.70
1952
6,870.00
210.00
991.20
1953
6,960.00
240.00
1,015.20
1954
6,960.00
300.00
914.40
Petitioner, for each of the years 1945 to 1954, inclusive, duly received after the close of *161 each of those years from his employer or employers the original and one copy of a withholding statement (Form W-2). Each of these statements contained clear and express instructions thereon as to who was required to file income tax returns. In addition to his employment during the years 1945 to 1954, inclusive, with the City of Pittsburgh and/or County of Allegheny, Pennsylvania, petitioner entered the private practice of law in 1940 and maintained an office and was engaged in the private practice of law during each of the years 1945 to 1954, inclusive. Petitioner filed income tax returns for the years 1940 and 1941 and a declaration of estimated tax and income tax return for the year 1943. He filed no income tax returns for the years 1942 and 1944, but did file a request for extension of time within which to file his income tax return for the year 1944, which request was granted. The returns filed on petitioner's behalf for the years 1940 and 1941 were prepared at his request by one John Ryan from information submitted by him to Ryan, and those returns were signed by petitioner. Petitioner did not file Federal income tax returns or declarations of estimated tax when due for any of *162 the years 1945 to 1954, inclusive, but did file requests for extensions of time within which to file his declaration of estimated tax and his income tax return for the year 1945, which requests were granted. Petitioners filed joint Federal income tax returns for each of the years 1945 to 1954, inclusive, with the district director of internal revenue at Pittsburgh, Pennsylvania, on June 6, 1957. Because of respondent's discovery of petitioner's failure to file income tax returns, an investigation was commenced by respondent's agents on December 7, 1955, into the tax liabilities of petitioner, and petitioner was first personally contacted by the special agent on January 24, 1956. On February 28, 1956, a cooperating revenue agent was assigned to assist in the investigation of petitioner's tax liability. Petitioner, during each of the years 1945 to 1954, inclusive, maintained no formal books of account for his private law practice to reflect the amounts and sources of receipts or the amounts of disbursements and identity of persons to whom expenditures were paid, but did retain bank statements and some canceled checks. Because of petitioner's failure to keep books and records, the bank *163 deposits method was employed by respondent to determine petitioner's gross income from his private practice of law. There were eliminated from the total deposits to petitioner's bank accounts for each year all deposits made during the year which could be identified through any means as representing income from sources other than his private law practice, and the difference was deemed to constitute the gross income received by petitioner from his law practice. Petitioner, during each of the years 1945 to 1954, inclusive, maintained a personal checking account in his individual name at the Potter National Bank and Trust Company, Pittsburgh, Pennsylvania (now Pittsburgh National Bank, as successor by consolidation with Fidelity Trust Company, the successor by merger of Potter Bank and Trust Company) which account is hereinafter referred to as the personal account. Petitioner on November 17, 1949, opened a checking account at the Potter Bank and Trust Company in the name of "Joseph A. Cirillo, Trustee" and maintained said account through and including the year 1954. This account is hereinafter referred to as the trustee account. The total deposits made by petitioner in his personal account *164 and in his trustee account in each of the years 1945 to 1954, inclusive, were as follows: Personal
Trustee
Year
Account
Account
1945
$ 7,228.32
1946
7,314.80
1947
6,863.28
1948
7,225.00
1949
7,013.38
$ 806.66
1950
8,616.05
3,650.00
1951
7,369.50
1,000.00
1952
8,282.60
1,100.00
1953
12,004.80
1954
8,018.70
10,900.00 The following amounts are included in the total deposits made by petitioner in his personal account during the years 1945 through 1954 and represent amounts received by petitioner from loans, salary checks (wages) and other sources and do not represent income from petitioner's law practice: Year
Amount
1945
$6,165.12
1946
6,738.80
1947
5,870.33
1948
6,496.75
1949
5,608.60
1950
$7,682.00
1951
5,327.60
1952
5,212.90
1953
5,704.80
1954
5,518.70
The following amounts were paid by petitioner in the years 1949, 1950, 1951 and 1954 to or on behalf of his clients by checks drawn against his trustee account and do not represent income from petitioner's law practice: Year
Amount
1949
$ 804.34
1950
2,570.00
1951
750.00
1952
1953
1954
9,015.00
Petitioner received fees from clients for legal services in the amounts and years indicated, all of which fees were deposited by him in either his personal account or trustee account: Year
Amount
1950
$1,405.00
1951
272.25
1952
2,025.00
1953
5,230.00
1954
3,550.00
The *165 clients paid none of the expenses incident to any investigation or presentation in the settlement of their respective claims, but such expenses were paid by petitioner. Petitioner received a fee check in 1950 from the Indiana Township School District in the amount of $150 which he did not deposit in either his personal account or trustee account. Petitioner received a fee check in 1953 from Walter Miller in the amount of $200, of which he deposited in his personal account only the amount of $100 and did not deposit the remaining amount of $100 in either his personal account or his trustee account. Petitioner received the total amount of $308.21 in the year 1954 as fees in his law practice which he did not deposit in either his personal account or his trustee account. This amount includes $143.30 received from Indiana Township as commissions. By reconstruction under the bank deposits method, petitioner's gross income from his private law practice in each of the years 1945 to 1954, inclusive, is as follows: Income Received
Income Received
Gross
Total Deposits
From Sources
From Law
Income
(Personal and
Other Than
Practice
(Law
Year
Trustee)
Law Practice
Not Deposited
Practice)
1945
$ 7,228.32
$ 6,165.12
$1,063.20
1946
7,314.80
6,738.80
576.00
1947
6,863.28
5,870.33
992.95
1948
7,225.00
6,496.75
728.25
1949
7,820.04
6,412.94
1,407.10
1950
12,266.05
10,252.00
$150.00
2,164.05
1951
8,369.50
6,077.60
2,291.90
1952
9,382.60
5,212.90
4,169.70
1953
12,004.80
5,704.80
100.00
6,400.00
1954
18,918.70
14,533.70
308.21
4,693.21
*166 The tax returns filed by petitioner on June 6, 1957, were prepared by Thomas L. George, certified public accountant, and reflect the following income tax due or overpayment for the years 1945 to 1954, inclusive, after allowing credit for taxes withheld from wages: Additional
Over-
Year
Tax Due
payment
1945
$ 45.40
1946
50.40
1947
97.20
1948
150.34
1949
153.76
1950
177.42
1951
143.78
1952
$ .74
1953
229.51
1954
209.32
Petitioner's gross income, allowable business expenses, and net profit derived from his law practice for each of the years as determined by respondent are set forth below: Gross
Allowable
Net
Year
Income
Expenses
Profit
1945
$1,063.20
$ 396.00
$ 667.20
1946
576.00
363.38
212.62
1947
$ 992.95
$ 238.50
$ 754.45
1948
728.25
469.87
258.38
1949
1,407.10
747.81
659.29
1950
2,164.05
1,082.68
1,081.37
1951
2,068.90 *
1,103.40
965.50
1952
4,169.70
1,703.13
2,466.57
1953
6,400.00
2,227.78
4,172.22
1954
4,693.21
1,771.63
2,921.58 Petitioner's taxable net income in each of the years 1945 to 1954, inclusive, the income tax liabilities computed thereon, the tax withheld and the additional tax due *167 or overpaid are as follows: Corrected
Taxable
Income Tax
Tax
Additional
Year
Net Income
Liability
Withheld
Tax Due
Overpayment
1945
$ 4,552.28
$ 644.00
$ 543.40
$100.60
1946
4,912.62
575.00
550.40
24.60
1947
4,931.56
679.19
619.20
59.99
1948
5,192.38
563.14
646.00
$82.86
1949
5,578.35
627.20
614.00
12.80
1950
6,092.12
754.48
667.80
86.68
1951
6,368.59
943.36
808.70
134.66
1952
8,402.91
1,528.32
991.20
537.12 *
1953
10,132.22
1,903.20
1,015.20
888.00 *
1954
7,093.42
1,480.54
914.40
566.14 *
Martha R. Cirillo received no taxable income in any of the years 1945 to 1954, inclusive. A criminal action was brought against petitioner in the United States District Court for the Western District of Pennsylvania for willful failure to file Federal income tax returns for the years 1953 and 1954 in violation of section 145(a), Internal Revenue Code of 1939, and section 7203, Internal Revenue Code of 1954. On June 11, 1957, petitioner *168 was tried and convicted on the verdict of a jury, after a plea of not guilty. Petitioner's conviction was affirmed by the Court of Appeals for the Third Circuit. United States v. Cirillo, 251 F. 2d 638, certiorari denied 356 U.S. 949. Petitioner made no effort at the close of each taxable year to review his bank ledger sheets, canceled checks and retained copies of bills submitted to clients (if prepared) or to determine from them and any other available records what income he had received and what expenses he had incurred in his private law practice in order to determine his tax liability. A part of the deficiency for each of the years 1945 to 1954, inclusive, was due to fraud with intent to evade tax. Opinion Petitioner has not requested any findings of fact, concedes that "There is no substantial dispute as to any basic fact in this case," and concedes the amount of the tax deficiencies computed by respondent by reconstruction of his law practice gross income under the bank deposits method. While taxes were withheld on petitioner's wages from his "full-time" employers during the years 1945 to 1954, inclusive, petitioner did not file income tax returns for any of such years or *169 report the income derived from either his "full-time" employers or his "parttime" law practice. The issues presented for our determination arise out of respondent's determination of additions to tax for fraud based upon petitioner's taxable income from both his "full-time" employers and his law practice. Petitioner disputes the additions to tax for fraud under section 293(b), [1] Internal Revenue Code of 1939, and section 6653(b), [2] *170 Internal Revenue Code of 1954, for each of the years 1945 to 1954, inclusive. We are thus confronted with the question of whether additions to tax for fraud may be imposed under those sections where there has been a consistent failure to file Federal income tax returns over a number of years by an educated person acquainted with the duty to file such returns and to pay the tax liabilities which would be disclosed thereon. Petitioner attacks respondent's determination on two grounds. First, petitioner contends that the deficiencies are minimal and that for the year 1948 there was an overpayment, apparently implying that the "minimal" amount of the deficiency negates the prohibited intent. Secondly, petitioner claims "that there is no evidence in this case of affirmative conduct or overt acts by the petitioner which would form a basis for a finding that the deficiencies involved are due to any intent to evade tax." The burden of proving fraud under section 293(b), Internal Revenue Code of 1939, and section 6653(b), Internal Revenue Code of 1954, is on the respondent. Section 1112, Internal Revenue Code of 1939, and section 7454, Internal Revenue Code of 1954. Fraud is a question of fact; it is never presumed, but must be shown *171 by clear and convincing evidence. Archer v. Commissioner, 227 F. 2d 270. Although separate additions to tax are imposed for willful failure to file (section 291(a), Internal Revenue Code of 1939; section 6651(a), Internal Revenue Code of 1954), failure to file does not preclude the application of the addition to tax for fraud. Indeed, we have several times sustained respondent's imposition of the addition to tax for fraud where no return was filed. See Fred N. Acker, 26 T.C. 107, and cases therein cited at page 112. As we said in that case, a taxpayer's failure to perform any of his duties incident to our self-disclosure system of tax collection, if "combined with a willful and positive attempt to defeat the statute or evade tax, in any manner or by any means," comes within the offense designated 'fraud with intent to evade tax." Fred N. Acker, supra, 111-112. We there further stated: Such willful attempt to defeat the statute or evade tax may be inferred from any conduct calculated to mislead or conceal; and it may be found not only in a situation where one of the methods employed was to file an intentionally false return, but also where the method involved a willful failure to *172 make any return whatever. * * * The seriousness of the consistent failure to file was well pin-pointed in Powell v. Granquist, 252 F. 2d 56, where the Court indicated that knowingly refusing to make any statement of income for a number of years would seem to be at least of equal persuasiveness as the consistent and substantial understatement of income for several years in evidencing an intent to defraud the Government. See also Charles F. Bennett, 30 T.C. 114, 123, where we stated: Surely, Congress did not intend to provide the "magic formula" to avoid the civil consequences of fraud where no return at all had originally been filed while at the same time withholding it from those who had originally filed a false return. We think a fair and reasonable construction of the revenue laws requires that both situations be treated alike. In claiming that there is here no "affirmative conduct or overt acts" petitioners rely on Spies v. United States, 317 U.S. 492, which distinguished the criminal sanctions imposed under section 145(a) for willful failure to file and section 145(b) for willful attempt to evade or defeat tax, holding at page 499 that "in employing the terminology of attempt *173 to embrace the gravest of offenses against the revenues, Congress intended some willful omissions in addition to the willful omissions that make up the list of misdemeanors." Such "terminology of attempt" is not employed on the civil side and, furthermore, the Supreme Court in Spies indicated that a willful failure to file could be considered with other acts in deciding whether there was a willful attempt to defeat and evade tax. In our view, the other facts and circumstances surrounding the continued willful failure to file, and the reasonable inferences to be drawn therefrom, are clear and convincing evidence that petitioner's failure to file was deliberate and fraudulent with intent to evade tax, and that a part of the deficiency for each of the years in issue was due to fraud with intent to evade tax. Accordingly, respondent's determination of additions to tax under section 293(b), Internal Revenue Code of 1939, and section 6653(b), Internal Revenue Code of 1954, for each of the years 1945 to 1954, inclusive, is sustained. Petitioner is an educated man. He is a lawyer admitted to practice law in the State of Pennsylvania. During the years in issue he was employed full time in *174 local governmental positions involving the handling of foreclosures of real estate for nonpayment of local real estate taxes. During these years he was also engaged in the private practice of law. It is not unreasonable to assume that he had more than a mere passing acquaintance with matters pertaining to Federal income taxation. Certainly, it is clear that he must have realized his duty to file income tax returns and to pay the tax liabilities disclosed thereby. In years prior to the years in issue he had filed income tax returns (1940, 1941, and 1943) and a declaration of estimated tax (1943). Moreover, after each of the years in issue his "full-time" employers furnished him with an original and copy of a withholding statement (Form W-2), which contained clear and express instructions as to who was to file returns and served as annual reminders to petitioner to file returns and to report thereon all of his income - income from his law practice as well as from wages. Petitioner did not keep any books and records regarding his law practice from which his income tax returns could be prepared. He never, at the conclusion of any of the years in issue, revised or analyzed what records *175 might have been available to him to determine from his income and expenses whether he had realized any taxable income thereon during that year. As petitioner testified: "I didn't make any analysis. I made a calculation in my own mind, and that was it." His sole reason for not filing his returns was stated by him as follows: "I very stupidly concluded, in view of the fact that I had payroll deductions and expenses in my practice, that I had refunds due me that would cancel out any tax liability that I may have had. It wasn't necessary, therefore, to file a return." Such a reason constitutes little more than a patently lame and untenable excuse. Petitioner never voluntarily disclosed his failure to file returns, nor did he ever file any income tax returns for the years involved until after his failure to file had been discovered by respondent's agents. While he cooperated with the examining agents during their investigation, such cooperation arose only after his failure to file had been discovered and apparently only after it had been resolved that his income could correctly be determined by the bank deposits method. The records concerning petitioner's salary and bank deposits were *176 available from the employer and the bank, respectively. Any information which petitioner could offer might tend to result in a decrease in his taxable net income. In short, he had everything to gain and nothing to lose by cooperating with the agents. Cast in such a framework, petitioner's cooperation is of little import in negating his fraudulent intent. Moreover, his conviction for the years 1953 and 1954 for willful failure to file under sections 145(a), Internal Revenue Code of 1939, and 7203, Internal Revenue Code of 1954, while not controlling as to the civil determination here involved, is evidence indicative of fraud which cannot properly be ignored. The case of Jones v. Commissioner, 259 F. 2d 300 (C.A. 5, 1958), reversing 25 T.C. 1100, relied upon by petitioners, is distinguishable. The Court of Appeals there found that there were no facts, independent of the willful failure to file, to support an intent to defraud. Petitioner's emphasis on the "minimal" nature of the deficiencies is without merit. The addition to tax for fraud is imposed without regard for the amount involved. Moreover, the total corrected tax liabilities upon which the additions to tax were based are *177 not inconsequential. Petitioners also contend that the wife-petitioner herein, Martha R. Cirillo, is not liable for the deficiencies in tax and additions to tax, especially those under section 293(b), Internal Revenue Code of 1939, and section 6653(b), Internal Revenue Code of 1954. We agree that petitioner Martha R. Cirillo is not liable for the additions to tax under sections 293(b) and 6653(b). There is no showing of any fraudulent intent or action on the part of the wife. She had no income of her own and was not required to file any income tax return for the years involved. She had not, prior to the filing of the delinquent returns for the years 1945 through 1954 on June 6, 1957, joined with her husband in the filing of any returns. In particular she did not join in the return for 1943 which was the only return filed by her husband subsequent to their marriage in 1942 and prior to the years involved. The fact that she joined in the filing of the delinquent returns by her husband on June 6, 1957, after he had been indicted for willful failure to file Federal income tax returns and only five days before his trial, is not, in the absence of other other evidence of fraudulent purpose *178 or conduct on her part, sufficient to make her liable for additions to tax under section 293(b) of the Internal Revenue Code of 1939 or section 6653(b) of the Internal Revenue Code of 1954. The liability of neither of the petitioners for the income taxes and additions to tax under sections 291(a) and 294(d)(1)(A) shown in the statutory notice of deficiency is in issue. The cases cited on brief by respondent, [3] *179 are distinguishable and do not, in our opinion, require a different conclusion. In each of those cases, except the Finnorn case, joint returns were timely filed by the taxpayers. In the Finnorn case, though the only returns filed were delinquent, such returns were themselves fraudulent, and resulted in the respondent making claim for additional taxes and additions to tax after investigation thereof revealed that the income reported therein had been understated. There taxpayers failed to include in the delinquent returns fees which had not been deposited in the bank account and erroneously showed certain deposits as nontaxable income which in reality represented fees. There is no contention or showing that the delinquent returns involved herein were fraudulent. The next issue pertains to the tax "deficiency" upon which the additions to tax should be based. Petitioners contend that said additions to tax should be based upon "the corrected tax less the amount of tax withheld." Respondent claims that the addition to tax for fraud should be computed upon the difference between the correct tax liability and the tax shown upon the return, if the return is timely filed, and without regard to any credit for income taxes withheld at the source by an employer. Section 293(b) provides that "If any part of any deficiency is due to fraud with intent to evade tax, then 50 per centum of the total amount of the deficiency (in addition to such deficiency) shall be so assessed, collected, and paid * * *." The term "deficiency" is defined in section 271(a)[4] *181 as the tax imposed *180 by this chapter, less the amount shown by the taxpayer upon his return plus the amounts previously assessed or collected as a deficiency, reduced by rebates. Thus, insofar as here pertinent, "deficiency" is the difference between the correct tax liability and the amount shown on the return. The return referred to is the original return due at the time provided by law. Maitland A. Wilson, 7 T.C. 395. The amounts withheld are immaterial to the computation of the "deficiency" as is evident from section 271(b)(1), [5] which provides that "The tax imposed by this chapter and the tax shown on the return shall both be determined * * * without regard to the credit under section 35," which credit is for income taxes withheld by the employer. The statutory pattern under the 1954 Code leads us to the same conclusion. Section 6653(b) provides that "If any part of any underpayment (as defined in subsection (c)) of tax required to be shown on a return is due to fraud, there shall be added to the tax an amount equal to 50 percent of the underpayment." Section 6653(c)(1) defines "underpayment" with respect to income taxes as a "deficiency" as defined in section 6211, except that the tax shown on the return referred to in section 6211(a)(1)(A) shall be taken into account only if the return was timely filed. Under section 6211 the definition of deficiency is similar to that under *182 the 1939 Code and likewise is determined without regard to a credit for taxes withheld. Accordingly, it is clear that under the provisions of both section 293(b) and section 6653(b) the addition to tax for fraud is computed upon the "total deficiency," being the difference between the correct tax liability and the tax shown upon the return, if the return is timely filed, and without regard to any credit for income taxes withheld. Absent the filing of a timely return the additions to tax for fraud are properly imposed upon the correct tax liability without any deduction for either income taxes withheld or the amount of tax shown upon the delinquent return. We so hold. The last issue pertains to the overpayment of $82.86 for the year 1948 which petitioners claim they are entitled to credit against the additions to tax assessed in that year. Section 322(a)(2) of the 1939 Code provides that the excess of taxes withheld over the correct tax liability constitutes an overpayment which, under section 322(a)(1), shall be credited against the taxpayer's income tax or refunded to him. However, section 322(a) is subject to the limitations of section 322(b)(1) which provides that no refund or credit *183 is allowable "Unless a claim for credit or refund is filed by the taxpayer within three years from the time the return was filed by the taxpayer or within two years from the time the tax was paid" and, under section 322(b)(2)(A), the amount of the credit or refund may not exceed the portion of the tax paid during the three years immediately preceding the filing of a claim. Here, petitioners' claim for refund for the year 1948 did not occur until the date of the delinquent filing of their tax return for that year on June 6, 1957, more than eight years after the year of the claimed overpayment. Thus, it is clear, and we so hold, that under the provisions of section 322(b)(2) petitioners are precluded from receiving any credit in respect to the overpayment of taxes in the year 1948. Garvin v. United States, 111 F. Supp. 265 (Ct. Cl., 1953). Decision will be entered under Rule 50. Footnotes
*. Gross income for 1951 is $223 less than amount previously shown due to error in that amount in totaling petitioner's deposits in personal account for that year.↩
*. The differences between these amounts and the amounts shown on the deficiency notice ($0.74 for 1952; $229.51 for 1953; and $209.32 for 1954) are not specifically explained, but, as appears from the statement attached to the deficiency notice, are apparently amounts which were assessed upon the filing of the delinquent returns.↩
1. SEC. 293. ADDITIONS TO THE TAX IN CASE OF DEFICIENCY. (b) Fraud. - If any part of any deficiency is due to fraud with intent to evade tax, then 50 per centum of the total amount of the deficiency (in addition to such deficiency) shall be so assessed, collected, and paid, in lieu of the 50 per centum addition to the tax provided in section 3612(d)(2)↩. 2. SEC. 6653. FAILURE TO PAY TAX. (b) Fraud. - If any part of any underpayment (as defined in subsection (c)) of tax required to be shown on a return is due to fraud, there shall be added to the tax an amount equal to 50 percent of the underpayment. In the case of income taxes and gift taxes, this amount shall be in lieu of any amount determined under subsection (a).
3. Kann v. Commissioner, 210 F. 2d 247(C.A. 3, 1953), affirming 18 T.C. 1032, certiorari denied 347 U.S. 967; Boyett v. Commissioner, 204 F. 2d 205 (C.A. 5, 1953), affirming a Memorandum Opinion of this Court; Myrna S. Howell, 10 T.C. 859, affirmed 175 F. 2d 240 (C.A. 6, 1949); Arthur N. Dellit, 24 T.C. 434; Dora S. Hughes, 26 T.C. 23↩; and John J. Finnorn, a Memorandum Opinion of this Court filed February 8, 1960.
4. SEC. 271. DEFINITION OF DEFICIENCY. (a) In general. - As used in this chapter in respect of a tax imposed by this chapter, "deficiency" means the amount by which the tax imposed by this chapter exceeds the excess of - (1) the sum of (A) the amount shown as the tax by the taxpayer upon his return, if a return was made by the taxpayer and an amount was shown as the tax by the taxpayer thereon, plus (B) the amounts previously assessed (or collected without assessment) as a deficiency, over - (2) the amount of rebates, as defined in subsection (b)(2), made. ↩
5. SEC. 271. DEFINITION OF DEFICIENCY. (b) Rules for Application of Subsection (a). - For the purposes of this section - (1) The tax imposed by this chapter and the tax shown on the return shall both be determined without regard to payments on account of estimated tax, without regard to the credit under section 35↩, and without regard to so much of the credit under section 32 as exceeds 2 per centum of the interest on obligations described in section 143(a);