**Maria SPANOS, Plaintiff,**

v.

**UNITED STATES of America,
Defendant.**

Civ. A. No. 13509.

United States District Court
D. Maryland.

Jan. 8, 1963.

Irving Shulbank, Baltimore, Md. (Donald N. Rothman and Gordon, Feinblatt & Rothman, Baltimore, Md., on the brief), for plaintiff.

John M. Hammerman, Atty., Dept. of Justice, Washington, D. C. (Joseph D. Tydings, U. S. Atty., Baltimore, Md., Louis F. Oberdorfer, Asst. Atty. Gen., Edward S. Smith and Donald A. Wilson, Jr., Attys., Dept. of Justice, Washington, D. C., of counsel), for defendant.

WINTER, District Judge.

After her husband's fraudulent late filing of a joint return, and after her husband's death, can a spouse, who has no income but who joined her husband in filing a joint return, disavow the filing of the joint return so that liability for the entire tax is visited solely upon her deceased husband's estate? If not, can she, since the fraud was solely that of her husband, escape liability for the interest and penalty on the amount due? These questions are raised by the following agreed facts:

FACTS:

The taxpayer's husband, who died September 25, 1956, fraudulently failed to file a federal income tax return for the taxable year 1955 on the day that the return was due—April 15, 1956. On July 2, 1956, there was filed a joint return, signed by both the taxpayer and her husband, for the calendar year 1955, which disclosed an income tax liability of $6,635.96. After audit, the return was accepted as filed, without change. Since no payment accompanied the return, a deficiency was assessed for the liability disclosed on the face of the return, plus interest and penalties, totalling $5,589.94, the principal item of the latter sum being the fraud penalty imposed because of the husband's fraudulent failure to file a timely tax return.

Taxpayer paid the deficiency of $12,225.90 on May 3, 1960, and has sued

for a refund. It is agreed that interest was overpaid in the amount of $43.61.

During the taxable year in question, taxpayer had no income of her own and taxpayer was innocent of her husband's fraudulent failure to file a federal income tax return for the taxable year 1955 when it was due.

## DISCUSSION AND OPINION:

The right to file a joint income tax return is conferred by section 6013 of the Internal Revenue Code of 1954, 26 U.S.C.A. (1958 Ed.) § 6013, the pertinent portion of which is set forth below.[1] Other provisions of § 6013 limit the right of taxpayers to elect to file a joint return after having first filed separate returns.

██ The taxpayer, in reliance upon Grobart v. Commissioner, 20 T.C.M. 629 (1961), and Mundy v. Commissioner, 14 T.C.M. 1067 (1955), and a case cited in the former, Grant v. Rose, 24 F.2d 115 (D.C.N.D.Ga.1928), aff'd. Rose v. Grant, 39 F.2d 340 (5 Cir. 1930), argues that, by a proper construction of § 6013, the determination to file a joint return could not legally be made after the due date of the return—in this case April 15, 1956 —so that the purported election made by

the filing of the joint return on July 2, 1956 was a nullity. As a consequence, taxpayer argues that the deficiency, including interest and penalty, should have been assessed against her deceased husband's estate on the basis of a separate return filed by him. First, it should be noted that a reading of the quoted portion of § 6013, as, indeed, a reading of the section in its entirety, although indicating the situations where a joint return is available to spouses, does not state when the election to file a joint return in the first instance must be made or, if made, when it becomes binding on the taxpayer. The absence of such language is of great significance when other limitations on the filing of a joint return have been carefully stated in this section, because it is obvious that where Congress desired to withhold the privilege, it did so specifically.

Nor do the cases cited by the taxpayer support this result. In the Grobart case no returns were ever filed for the years 1948 and 1949 and the wife of the taxpayer had no income for those years. In 1957 the Internal Revenue Service asserted a deficiency on the basis of a single return and, after the deficiency was assessed, after Grobart had filed a petition

---

1. "§ 6013. Joint returns of income tax by husband and wife

"(a) Joint returns.—A husband and wife may make a single return jointly of income taxes under subtitle A, even though one of the spouses has neither gross income nor deductions, except as provided below:

"(1) no joint return shall be made if either the husband or wife at any time during the taxable year is a nonresident alien;

"(2) no joint return shall be made if the husband and wife have different taxable years; except that if such taxable years begin on the same day and end on different days because of the death of either or both, then the joint return may be made with respect to the taxable year of each. The above exception shall not apply if the surviving spouse remarries before the close of his taxable year, nor if the taxable year of either spouse is a fractional part of a year under section 443(a) (1);

"(3) in the case of death of one spouse or both spouses the joint return with respect to the decedent may be made only by his executor or administrator; except that in the case of the death of one spouse the joint return may be made by the surviving spouse with respect to both himself and the decedent if no return for the taxable year has been made by the decedent, no executor or administrator has been appointed, and no executor or administrator is appointed before the last day prescribed by law for filing the return of the surviving spouse. If an executor or administrator of the decedent is appointed after the making of the joint return by the surviving spouse, the executor or administrator may disaffirm such joint return by making, within 1 year after the last day prescribed by law for filing the return of the surviving spouse, a separate return for the taxable year of the decedent with respect to which the joint return was made, in which case the return made by the survivor shall constitute the separate return."

for review in the Tax Court, after the case was docketed, and after the Internal Revenue Service had prepared substitute returns for Grobart on an individual basis, Grobart and his wife, on April 30, 1959, attempted to file joint income tax returns for 1948 and 1949. It was held (20 T.C.M. p. 640), "since petitioner, together with his wife, did not timely file joint income tax returns for the years 1948 and 1949, he is not entitled to the split income features of section 12(d) in the tax computation for the years 1948 and 1949." [2]

To reach this result in the Grobart case, there was cited, with approval, certain language of the District Court in Grant v. Rose, supra, wherein the District Judge pointed out that (24 F.2d p. 118):

"There is nothing in the law to prohibit the choice of joint or separate returns according to the result on the taxes to be paid, although husband and wife actually have kept their affairs entirely separate. On the other hand, there is nothing in the act to extend the right of choice beyond the time for making the returns. It is not unreasonable to claim a right to substitute one form of return for the other up to the last day for making returns, but, after that, and especially after the returns have been reviewed and assessments made, there are strong administrative reasons for not permitting the upsetting of the whole basis of calculation."

The statement was made in the context of facts, which showed that the taxpayers had elected to file a joint return and, thereafter, beyond the due date of the return, and without any extension of time or permission so to do, attempted to revoke their election and to file separate returns.

On appeal, the Grant case was affirmed. It is perhaps significant that the Circuit Court of Appeals was more guarded in its statement than the District Court, in that it eliminated any reference to when the right of choice must be exercised, and affirmed the lower court, for the reason that (39 F.2d p. 341):

"The husband and wife having made a single joint return within the time prescribed by law, the Commissioner was fully justified in declining to accept the separate returns made contrary to the ruling above quoted [a 1922 Commissioner's ruling denying the right to file an amended return changing the basis from joint to separate or vice versa] and long after the time prescribed by the statute."

The Mundy case fits the same pattern. There the taxpayer had filed no return and the Commissioner had assessed a deficiency on the basis of a joint return. The wife, however, contested her liability. During the course of the proceeding, the government amended, asserting a new deficiency assessment on an individual return basis. The taxpayer, however, continued to contend that the deficiency should have been computed on the basis of a joint return. The contention received summary treatment in the statement that husband and wife may elect to file a joint return, but (14 T.C.M. p. 1072), "That determination must be exercised by the taxpayers at the time the return if [sic] filed."

Notwithstanding the apparent implication of some of the language they employ, these three cases, on their facts, do not constitute judicial construction of § 6013 and its predecessor sections, which would supply a limitation not written into the Act by Congress that in no event may taxpayers elect, after the due date of a return, to file a joint return. Rather, the cases introduce into

---

2. The Grobart case arose under the Internal Revenue Code of 1939. The provisions of the statute with regard to the filing of joint returns by husband and wife were substantially the same as those contained in the Internal Revenue Code of 1954.

§ 6013 the principle, founded upon equitable considerations, that if an election has been made and acted upon by the Commissioner, or if, as the result of a failure to file a return, the Commissioner has been required to make an election for the taxpayers (or change an election due to a spouse's valid nonacquiescence), that election may not thereafter be altered. Viewed in the light of the principle that the mere late filing of a return does not nullify it, United States v. De Hardit, 120 F.Supp. 110, 114 (D.C.E.D. Va.1954), aff'd. 224 F.2d 673 (4 Cir., 1955), cert. den. 350 U.S. 863, 76 S.Ct. 105, 100 L.Ed. 765,[3] the cases cited by taxpayer are adverse to her position here, because the taxpayer and her husband elected to file a joint return on July 2, 1956, and that return was accepted and acted upon by the Commissioner. Equitable considerations, as well as the administrative problems of the converse result, indicate that that election is binding on her and may not now be modified.

If not permitted to disavow the joint return on the ground that the election to file the joint return was a legal impossibility, the taxpayer next argues that where she received no income in her own right subject to tax, she should be excused from the payment of interest and penalty arising out of what was admittedly solely her husband's fraud. Legally and equitably, this argument is without merit.

■ The so-called fraud penalty is, by the language of 26 U.S.C.A. (1958 Ed.) § 6653, an amount "* * * added to the tax * * * equal to 50 percent of the underpayment," as is interest which, by the language of 26 U.S.C.A. (1958 Ed.) § 6654(a), is also "added to the tax * * * at the rate of 6 percent per annum upon the amount of the underpayment." Thus, both penalty and interest become a part of the tax. As to the tax generally, 26 U.S. C.A. (1958 Ed.) § 6013(d) provides that, "if a joint return is made, the tax shall be computed on the aggregate income *and the liability with respect to the tax shall be joint and several.*" (Emphasis supplied)

■ The Courts of Appeals, which have had occasion to consider the question, have rejected the plea of an innocent spouse who joined in the filing of a joint return, to be relieved of the fraud of a husband, Ginsberg's Estate v. C. I. R., 271 F.2d 511 (5 Cir. 1959); Boyett v. Commissioner of Internal Revenue, 204 F.2d 205 (5 Cir. 1953); Prokop v. Commissioner of Internal Revenue, 254 F.2d 544 (7 Cir. 1958); Furnish v. C. I. R., 262 F.2d 727 (9 Cir. 1958); Kann v. Commissioner, 210 F.2d 247 (3 Cir. 1953); cert. den. 347 U.S. 967, 74 S.Ct. 778, 98 L.Ed. 1109 (1954), see also, Howell v. Commissioner of Internal Revenue, 175 F.2d 240 (6 Cir. 1949). These cases have proceeded on the theory that the penalty for fraud and interest are additions to the tax and, in the case of a joint return, liability for the tax is joint and several, irrespective of the fact that one spouse has neither gross income nor deductions. Of particular significance is the Ginsberg's Estate case where, as in the case at bar, the surviving spouse was innocent of fraud, but, nevertheless, was held liable for the fraud penalty.

There is only one authority to the contrary, Cirillo v. Commissioner, 20 T.C.M. 956 (1961). That case attempts to distinguish, unsuccessfully to me, the authorities above cited, on the ground that they involved joint returns timely filed. 26 U.S.C.A. § 6013(d), supra, fails to provide a ground for such distinction, and the legislative history of the joint and several liability on joint returns aspect of the Internal Revenue Act of

3. As the Commissioner points out, in the absence of the special factors present in the authorities cited by the taxpayer, administratively the Act has not been construed to bar an initial election made after the due date of a return. As examples, see Grimes v. Commissioner, 20 T.C.M. 1662 (1961); Finnorn v. Commissioner, 19 T.C.M. 87 (1960); Cirillo v. Commissioner, 20 T.C.M. 956 (1961); Williams v. Commissioner, 16 T.C. 893 (1951).

1938, the predecessor of § 6013(d), fails to support any such contention.[4]

The Cirillo case is the subject of petitions for review of the decision of the Tax Court of the United States, filed by the taxpayers and the Commissioner, and has been argued, and is awaiting decision, in the United States Court of Appeals for the Third Circuit (No. 13,902). Comparison of the memorandum opinion of the Tax Court with the decisions of the Courts of Appeals of the other circuits, including the decision of the Third Circuit in Kann v. Commissioner, supra, indicates no need to delay the decision in the case at bar for the filing of an opinion by the United States Court of Appeals for the Third Circuit.

When viewed on equitable grounds, the taxpayer's contention is also lacking in merit. During her husband's lifetime, it was to the advantage of the taxpayer to join with him in filing a joint return, so as to achieve a splitting of income, a consequent reduction in tax due, and a lesser diminution of assets and income from which her support was derived. It must be noted that, by a splitting of income, there is a consequent reduction in penalty and interest due, since both are computed on the basis of the initial tax. Having sought to avail herself of these advantages, the taxpayer may not complain of their consequences solely on the basis of the intervening death of her husband.

JUDGMENT:

Judgment will be entered for the taxpayer for $43.61, the amount of the stipulated overpayment of interest.

4. H.Rep. No. 1860, 75th Cong., 3rd Sess., pp. 29–30 (1939–1 Cum.Bull. (Part 2) 728, 749):

"Section 51(b) of the bill expressly provides that the spouses, who exercise the privilege of filing a joint return, are jointly and severally liable for the tax computed upon their aggregate income. It is necessary, for administrative reasons, that any doubt as to the existence of liability should be set at rest, if the privilege of filing such joint returns is continued."

Report of a Subcommittee of the Committee on Ways and Means, House of Representatives, 75th Cong., 3rd Sess., on Proposed Revision of the Revenue Laws, 1938, pp. 49–50:

" * * * the Bureau of Internal Revenue has taken the position for many years that the filing of such a return [joint return] by husband and wife creates a joint and several liability on their part for the tax on their aggregate net income; *and that deficiencies, penalties, and interest may be collected* from either or both of them.

"In the opinion of your subcommittee the Bureau's position is sound; and to avoid further confusion and litigation it is recommended * * * that an amendment be inserted in the statute to make it clear that if a husband and wife choose to file a joint return, each of them will be liable for the tax on their aggregate income, *and for any deficiencies, penalties, and interest in respect of the joint return* which may thereafter be determined." (Emphasis supplied)