LOIS L. STALKER, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Stalker v. Commissioner
Docket No. 14955-80.
United States Tax Court
T.C. Memo 1981-544; 1981 Tax Ct. Memo LEXIS 205; 42 T.C.M. (CCH) 1190; T.C.M. (RIA) 81544; September 24, 1981. *205 Petitioner, with her husband, sold farm property in 1975 and elected to report her gain on the installment method. Held, a portion of the installment payment representing payment of principal constitutes long-term capital gain to petitioner in 1977 and 1978. Held further, the first Form 1040 filed by petitioner for 1977 does not constitute a "return" within the meaning of sec. 6011(a), I.R.C. 1954. Held further, petitioner is not entitled to elect to file a joint return for 1977 after receiving a notice of deficiency and after having filed a timely petition with the Tax Court for that year. Sec. 6013(b)(2). Held further, petitioner is not entitled to recover costs incurred in bringing this action. Sharon v. Commissioner, 66 T.C. 515 (1976), affd. per curiam 591 F.2d 1273 (9th Cir. 1978), cert. denied 442 U.S. 941 (1979), followed. Held further, petitioner is liable for additions to tax under sec. 6651(a) for failure to file a timely return. Held further, petitioner is liable for additions to tax under sec. 6653(a) for negligence or intentional disregard of the rules and regulations. Held further, petitioner is liable for additions to tax under sec. 6654 for underpayment of *206 estimated tax. Lois L. Stalker, pro se. Gary A. Benford, for the respondent. STERRETT
MEMORANDUM FINDINGS OF FACT AND OPINION STERRETT, Judge: By notice of deficiency dated May 30, 1980 respondent determined deficiencies in tax and additions to tax as follows: Addition to tax under
Year
Deficiency
sec. 6651(a)
sec. 6653(a)
sec. 6654
1977
$ 4,435.62
$ 827.66
$ 221.78
$ 83.84
1978
2,863.00
715.75
143.15
91.62
After concessions, the issues remaining for our decision are: (1) whether petitioner realized capital gain income during 1977 and 1978 in the amounts of $ 2,297.83 and $ 4,595.16, respectively; (2) whether the first Form 1040 submitted by petitioner for 1977 constitutes a Federal income tax return within the meaning of section 6011(a), I.R.C. 1954; (3) whether petitioner is entitled to file a joint return with her deceased husband and claim an additional exemption for him for 1977; (4) whether petitioner is entitled to recover her costs incurred in bringing this action; (5) whether petitioner is liable for the additions to tax under section 6651(a) for failure to file a return on or before the prescribed filing date with respect to her 1977 and 1978 taxable years; (6) whether petitioner is liable *207 for the additions to tax under section 6653(a) for negligence or intentional disregard of rules and regulations with respect to her 1977 and 1978 taxable years; and (7) whether petitioner is liable for the additions to tax under section 6654 for failure to pay estimated tax with respect to her 1977 and 1978 taxable years. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and exhibits attached thereto are incorporated herein by this reference. Petitioner Lois L. Stalker resided in Amarillo, Texas at the time of filing her petition herein. In 1968 petitioner and her husband, Cecil Stalker, purchased real estate described as the Northeast Quarter (NE/4) of Section Twenty-four (24), Township Twenty-one (21) South, Range Fourteen (14) West of the 6th P.M., in Stafford County, Kansas (hereinafter the Kansas farm). On August 5, 1975 Lois L. Stalker and Cecil Stalker, as sellers, and Hugh A. McCandless, Arlene E. McCandless, Lloyd L. Strobel and Jean Strobel (hereinafter McCandless and Strobel), as buyers, executed a real estate sales contract for the conveyance of the Kansas farm. The total sales price was $ 120,000. The terms of the contract *208 called for a downpayment of $ 20,000 ($ 2,000 due on the execution of the contract and $ 18,000 due on October 5, 1975), with the first installment payment of $ 12,000 plus interest of 7-1/2 percent per annum due on January 5, 1977. [1] Petitioner's basis in the Kansas farm on the date of sale was $ 28,096. Prior to the due date of the first installment payment, McCandless and Strobel experienced financial difficulties. Doonan Truck & Equipment, Inc. of Great Bend, Kansas (hereinafter Doonan) made the first installment payment of $ 23,094.55 (consisting of principal of $ 12,000 and interest of $ 11,094.55) to petitioner on or about January 27, 1977. Thereafter, on March 5, 1977, McCandless and Strobel *209 as sellers and Doonan as buyer executed a contract for the sale of the Kansas farm. Pursuant to this contract, Doonan assumed the balance of the Stalker contract in the principal amount of $ 88,000. By deed dated July 8, 1977 title to the Kansas farm was transferred from McCandless and Strobel to Doonan. On January 9, 1978, pursuant to the real estate sales contract, petitioner received the second installment payment from Doonan in the amount of $ 18,600. Of this second payment $ 12,000 represented principal and $ 6,600 represented interest. Petitioner's husband died on January 21, 1977. Prior to his death, he was hospitalized on a number of occasions for surgery. Although insurance covered a large part of the hospital bills, such insurance did not cover much of the doctor bills. Petitioner experienced difficulty in paying the doctor bills. Even so, petitioner paid medical and dental expenses (exclusive of insurance premiums) of $ 422.25 in 1977. Petitioner realized a short-term capital loss of $ 3,752.77 and a long-term capital loss of $ 841.88 from the sale of stock in 1977. For the taxable year 1975 petitioner filed a joint Federal income tax return with her husband. *210 On such return they reported their gain from the sale of the Kansas farm using the installment method of accounting. Similarly, for the taxable year 1976, petitioner filed a joint Federal income tax return with her husband. Again, they reported the gain from the 1975 sale of the Kansas farm pursuant to the installment method. For the taxable year 1977 petitioner filed a Form 1040 dated April 15, 1978 (hereinafter first Form 1040 for 1977) with the Internal Revenue Service. Thereon petitioner stated her name, elected to be taxed at rates applicable to married persons filing separately and claimed exemptions for herself and for her deceased spouse. In addition, the words "object: self-incrimination" or "none" were typed on each line of the document. Petitioner attached to the Form 1040 a 9-page memorandum stating her grounds for asserting the Fifth Amendment protection against self-incrimination. On May 30, 1980 respondent mailed a notice of deficiency to petitioner for the taxable years 1977 and 1978. Petitioner filed her petition with this Court on August 4, 1980. On April 17, 1981 petitioner submitted a second Form 1040 for 1977 and a Form 1040 for 1978 to the Internal Revenue *211 Service. The document for 1977 claimed "married filing joint return" filing status and claimed two exemptions (one for petitioner and one for her deceased husband), but did not restate the various constitutional objections of the earlier document. On the Form 1040 for 1978 petitioner elected to be taxed at rates applicable to a single person, claimed one exemption, and again did not state any constitutional objections. In his notice of deficiency respondent determined deficiencies for 1977 and 1978 and additions to tax for failure to file timely returns, negligence or intentional disregard of the rules and regulations, and failure to pay estimated tax. Each deficiency was calculated on rates applicable to single persons. OPINION The first issue for our decision is whether petitioner realized capital gain income during 1977 and 1978 as a result of the sale of the Kansas farm property in 1975. The terms of the real estate sales contract provided for payment of $ 12,000 plus interest of 7-1/2 percent per year on January 5 of each year beginning in 1977. On January 27, 1977 and January 9, 1978 petitioner received installment payments under the contract in the amounts of $ 23,094.55 *212 and $ 18,600, respectively. Of these amounts $ 11,094.55 and $ 6,600 represented interest paid in 1977 and 1978, respectively. The remaining $ 12,000 of each installment represented payment of principal. At the time of the sale of the Kansas farm, petitioner and her husband elected to report their gain on the installment method of accounting. Section 453(a) provides that income from an installment sale shall be recognized in each year that payments are received in an amount equal to that proportion of the payments received "which the gross profit, realized or to be realized when payment is completed, bears to the total contract price." [2] *213 Under the installment method elected by petitioner, 76.586 percent of the principal amount of each installment payment represented capital gain to petitioner. [3] Applying this gross profit percentage to the principal amounts received by petitioner in 1977 and 1978, we find that petitioner realized long-term capital gain income from the sale of the Kansas farm in the amount of $ 9,190.32 in each year. [4] *214 The second issue for our consideration is whether the first Form 1040 submitted by petitioner for 1977 constitutes a return within the meaning of section 6011(a). Section 6011(a) provides generally that any person liable for any tax shall make a return or statement of information. [5] *215 The first Form 1040 filed by petitioner for the taxable year 1977 contained petitioner's name, a purported filing status of "married filing separately," a claim of two exemptions, and various constitutional objections to providing any further information. It is well settled that a taxpayer's obligation to file a return does not violate his Fifth Amendment privilege against self-incrimination. United States v. Sullivan, 274 U.S. 259, 263 (1927). Furthermore, this Court has long held that a Form 1040 will not qualify as a "return" if it does not specifically state the amounts of gross income, deductions and credits claimed. Sanders v. Commissioner, 21 T.C. 1012, 1018 (1954), affd. 225 F.2d 629 (10th Cir. 1955). The mere act of filing a Form 1040 for a taxable year does not constitute a "return." See United States v. Radue, 486 F.2d 220, 222 (5th Cir. 1973), cert. denied 416 U.S. 908 (1974). In United States v. Smith, 618 F.2d 280 (5th Cir. 1980), the Fifth Circuit Court of Appeals, to which an appeal in this case would lie, held that a Form 1040 that contained nothing more than zeros and constitutional objections did not disclose sufficient information "relating to the taxpayer's income from which the tax can be computed," and therefore did not constitute a "return." 618 F.2d at 281. See also United States v. Moore, 627 F.2d 830 (7th Cir. 1980), *216 affg. an unreported district court case, cert. dlenied     U.S.     (1981); United States v. Porth, 426 F.2d 519, 523 (10th Cir. 1970), cert. denied 400 U.S. 824 (1970). In the instant case the first Form 1040 for 1977 presented by petitioner lalcked the essential information upon which calculation of the petitioner's gross income and adjusted gross income could be made. Petitioner gave no information that would disclose her income, deductions or credits. As such, respondent was without sufficient information to determine petitioner's tax lialbility. Conforte v. Commissioner, 74 T.C. 1160, 1196-1197 (1980), on appeal (9th Cir. Aug. 28, 1981). Accordingly, we find that the first Form 1040 for 1977 did not constitute a "return." Third, we must determine whether petitioner was entitled to file a joint return with her deceased husband for 1977 and whether she was entitled to claim an additional exemption for him for the year in which he died. Petitioner's husband died on January 21, 1977. On May 30, 1980 a statutory notice of deficiency was mailed to petitioner for the 1977 taxable year. Petitioner timely filed her petition with this Court on August 4, 1980. It was not until April *217 17, 1981, more than 8 months later, that petitioner presented a second Form 1040 for 1977 to the Internal Revenue Service. This second Form 1040 for 1977 claimed a filing status of "married filing jointly" and claimed two exemptions. [6]
Section 6013(a) provides that a husband and wife may elect to file a joint return except in specified circumstances. In addition, section 6013(b)(1) permits couples to file joint returns for a taxable year even if they have already filed *218 separate returns and the time for filing a return for such taxable year has expired. However, section 6013(b)(2)(C) limits the right of a taxpayer to elect a change from separate return status to joint return status "after there has been amiled to either spouse, with respect to such taxable year, a notice of deficiency under section 6212, if the spouse, as to such notice, files a petition with the Tax Court within the time prescribed in section 6123 * * *." In the instant case the petition preceded petitioner's election to file a joint return. We therefore find that section 6013(b)(2)(C) applies directly to the facts of the instant case. Accordingly, petitioner is foreclosed from electing joint return status for 1977 on her second Form 1040. [7]
With respect to the question whether petitioner is entitled to an exemption for her deceased husband for *219 the 1977 taxable year, we note that section 151(b) provides, in general, that a taxpayer filing other than a joint return may claim an exemption for his spouse if the spouse neither had any gross income for the taxable year nor was the dependent of another taxpayer. Suffice it to say that petitioner failed to establish that her husband had no gross income for 1977. Therefore, she may not avail herself of the exemption allowed under section 151(b). See Richardson v. Commissioner, 72 T.C. 818, 825-826 (1979). The fourth issue is whether petitioner is entitled to recover her costs in bringing this action. In her petition petitioner sought an award of costs from this Court. There is no basis in the Internal Revenue Code or in the case law for this Court to award costs to a taxpayer. Sharon v. Commissioner, 66 T.C. 515, 533-534 (1976), affd. per curiam 591 F.2d 1273 (9th Cir. 1978), cert. denied 442 U.S. 941 (1979). Accordingly, petitioner's claim for recovery of costs in bringing this action is denied. Fifth, we consider whether petitioner is liable for additions to tax under section 6651(a) for the 1977 and 1978 taxable years for failure to file a timely return. We note that petitioner's *220 filing of proper tax returns in 1975 and 1976 is evidence that she was aware of her obligation to file a tax return. Further, we have already found that the first Form 1040 filed for 1977 does not constitute a return within the meaning of section 6011(a) because it does not include the information required by the forms or regulations prescribed by the Secretary within the meaning of section 6011(a). We therefore must determine whether petitioner has shown that her failure to file a tax return for 1977 until April 17, 1981 was "due to reasonable cause and not due to willful neglect," within the meaning of section 6651(a), so as to obviate the imposition of the addition to tax prescribed therein. The burden of proof rests upon petitioner. Electric & Neon, Inc. v. Commissioner, 56 T.C. 1324, 1342 (1971), affd. without published opinion 496 F.2d 876 (5th Cir. 1974). At trial petitioner testified that, at the time the return was due, she did not have the money to pay her taxes on account of her husband's illness and death. While we sympathize with petitioner's situation at the time, and we can appreciate the difficult personal position in which she found herself, we hold that petitioner *221 has not met her burden of showing a reasonable cause for failure to file a timely return. Our tax system makes ample provision for taxpayers to get extensions on the time in which they must file their returns, see sec. 6081, and even provides for ways for taxpayers to pay large tax liabilities over a period of time. See sec. 6161. In addition, we note that, despite the difficulties in petitioner's life, she found the time to file a first Form 1040 on or about April 15, 1978 for the taxable year 1977. That document was a protest-type document containing numerous objections to providing information based upon claims of self-incrimination and must have been time-consuming in preparing. In addition, attached to the document was 9 pages of citations and discussion to support her constitutional claims. We believe that this further supports our conclusion that petitioner's failure to file a "return" for 1977 was not due to reasonable cause. With respect to 1978, petitioner has not provided the Court with any tangible evidence that she filed a return in that year. Petitioner did testify that she filed a Form 1040 for 1978 similar to the first Form 1040 for 1977, i.e., replete with constitutional *222 objections. We find that petitioner has not met her burden of proving that she filed a return for 1978. Even if we were to accept petitioner's testimony that she did file a Form 1040 for such year, our holding with respect to the first Form 1040 for 1977 would be equally applicable to such document. Accordingly, the additions to tax prescribed in section 6651(a), as determined by respondent, are upheld. Respondent has also determined that petitioner is liable for additions to tax provided by section 6653(a) for negligence or intentional disregard of the rules and regulations for both the 1977 and 1978 taxable years. The petitioner has the burden to prove that the addition to tax determined by respondent is unjustified. Bixby v. Commissioner, 58 T.C. 757, 791 (1972). As stated previously, petitioner was aware of her obligation to file tax returns for she had properly done so in prior years. Furthermore, petitioner testified that she knew that a portion of the principal payments and all of the interest payments received from the sale of the Kansas farm, as well as her oil and gas royalties, constituted taxable income. Despite this knowledge, petitioner chose to file a protest-type *223 document for 1977 and no Form 1040 for 1978. This Court has, in the past, held that constitutional objections neither relieve a taxpayer of liability for additions to tax nor constitute reasonable cause for failing to file a timely income tax return. See Hatfield v. Commissioner, 68 T.C. 895, 898 (1977). Accordingly, we hold that petitioner is liable for additions to tax provided by section 6653(a). Finally, respondent determined that petitioner is liable for additions to tax provided by section 6654 for failure to pay estimated tax. Section 6654 imposes an addition to tax in the case of any underpayment of estimated tax by an individual, subject to certain exceptions contained in section 6654(d). This addition to tax is imposed regardless of a showing of reasonable cause for the underpayment. See sec. 1.6654-1(a), Income Tax Regs.; Reaver v. Commissioner, 42 T.C. 72, 83 (1964). Having determined that none of the exceptions in subsection (d) apply to this case, we find that respondent properly determined the applicability of the section 6654 additions to tax. Concessions having been made. Decision will be entered under Rule 155. Footnotes
1. The stipulation of facts erroneously states that the first payment under the real estate sales contract was due on Jan. 1, 1977. Upon examination of the contract we note that the terms thereof require the "balance of $ 100,000.00 to be paid with the principal sum of $ 12,000.00 plus accrued interest on the 5th day of January, 1977, and $ 12,000.00 principal plus accrued interest on the 5th day of January each and every year thereafter until this contract has been paid in full. * * *"↩
2. The applicable Code section, sec. 453, provided during the years in issue in pertinent part as follows: SEC. 453. INSTALLMENT METHOD. (a) Dealers in Personal Property. -- (1) In General.--Under regulations prescribed by the Secretary, a person who regularly sells or otherwise disposes of personal property on the installment plan may return as income therefrom in any taxable year that proportion of the installment payments actually received in that year which the gross profit, realized or to the realized when payment is completed, bears to the total contract price. (b) Sales of Realty and Casual Sales of Personalty--(1) General Rule.--Income from-- (A) a sale or other disposition of real property, or (B) a casual sale or other casual disposition of personal property * * * for a price exceeding $ 1,000, may (under regulations prescribed by the Secretary) be returned on the basis and in the manner prescribed in subsection (a). ↩
3. Petitioner's gross profit percentage was determined as follows: petitioner's basis in the Kansas farm was $ 28,096. The farm was sold for a total of $ 120,000. The ratio of gain ($ 120,000 less $ 28,096 equals $ 91,904) to sales price ($ 120,000) was 76.586 percent. ↩
4. At trial petitioner introduced evidence supporting her realization of a long-term capital loss of $ 3,752.77 and a long-term capital loss of $ 841.88 from the sale of stock in 1977. Respondent concedes that both losses were realized and should be recognized in the calculation of petitioner's net capital gain for 1977.
5. Sec. 6011(a) provides, in pertinent part, as follows: SEC. 6011. GENERAL REQUIREMENT OF RETURN, STATEMENT, OR LIST. (a) General Rule.--When required by regulations prescribed by the Secretary any person made liable for any tax imposed by this title, or for the collection thereof, shall make a return or statement according to the forms and regulations prescribed by the Secretary. Every person required to make a return or statement shall include therein the information required by such forms or regulations.
6. On the first Form 1040 for 1977, filed on or about Apr. 15, 1978, petitioner claimed a filing status of "married filing separately." We have already found that this Form 1040 for 1977 did not constitute a return. However, even if such document were to be considered a return, we note that petitioner failed to elect joint return filing status thereon. It is well settled that the election to be taxed at joint return rates can only be made by filing a joint return. Dritz v. Commissioner, T.C. Memo. 1969-175, affd. per curiam 427 F.2d 1176↩ (5th Cir. 1970). Because no such election was made on petitioner's first Form 1040 for 1977, we must examine the validity of the election that was made on the second Form 1040 for 1977.
7. Having found that sec. 6013(b)(2)(C) applies to the facts in this case, we need not address respondent's alternative contentions with respect to the applicability of sec. 6013(a)(3), sec. 6013(b)(2)(B), and the case of Spanos v. United States, 212 F.Supp. 861, 864 (D.Md. 1963), affd. in part and revd. in part 323 F.2d 108↩ (4th Cir. 1963).